IRVING, J„
for the Court.
¶ 1. Darrell McBride was convicted of murder by an Attala County jury and was sentenced to life in the custody of the Mississippi Department of Corrections by the Attala County Circuit Court. His appellate counsel has filed a Lindsey[1] brief, asserting that there are no arguable issues for us to review on appeal. McBride has declined to file a pro se supplemental brief.
¶ 2. Finding no arguable issues, we affirm the judgment of the circuit.
FACTS
¶3. On March 4, 2002, Charles Green was murdered at his home in Attala County. His body was found near his carport, and it was later determined that he had suffered a number of injuries, including several lethal stab wounds. No murder weapon was recovered at the scene. Two blood drops were found on Green’s body; a crime-scene-investigation expert testified that the drops were most likely left by Green’s assailant as he stood over Green’s body. Bloody footprints were found leading into the home, and several blood samples were recovered from inside the home. Inside, investigators found a jewelry box that looked as though it had been rifled through. Several other blood samples were collected from outside the home, including drops of blood that led toward a road.
¶ 4. Green’s murder remained unsolved until McBride’s DNA was matched to the crime through the Combined DNA Index System (CODIS). Through DNA testing, McBride was linked to blood found on leaves at the scene of the murder, blood found in the living room of the home, and the two drops of blood found on Green’s body. The chance of any of those samples belonging to someone other than McBride was testified to as one in ten quadrillion.
¶ 5. Evidence at trial showed that McBride was treated on the day of the murder for wounds to his hand, including a cut severe enough to sever a tendon in his little finger. Arthur Steven Chancellor, who was a senior crime scene analyst with the Mississippi Crime Laboratory in March 2002, testified that “particularly in injuries where you have a sharp force injury or where you have a knife that is being used, we all look for any signs that the offender may have injured themselves [sic].” Chancellor indicated that assailants in these situations frequently injure themselves because: “when you have a knife and you are wielding a knife against your victim, you get blood on your hands which becomes very slippery, and many times as you thrust downward ... your hand [will] slip off [and come] in contact with the blade.” Chancellor testified that, although injuries to any part of the hand are possible, the most likely place for an assailant to injure himself is on his little finger. One of the doctors who treated McBride’s wound in 2002 testified that McBride explained that he received the injury while using a box cutter to put up Sheetrock.
*370 ¶ 6. At trial, McBride testified in his own defense. McBride claimed that he went to Green’s home at the behest of Charles Burden, who was McBride’s employer around the time of the murder. McBride testified that he stayed in Burden’s truck while Burden exited and spoke with Green under the carport. McBride further testified that Burden began stabbing Green as Green reached into a freezer to retrieve some catfish. McBride testified that, at this point, he jumped out of the truck and attempted to intervene, and that Burden cut his hand when McBride attempted to take the knife from him. McBride further explained that he walked back toward the truck after Burden told him to return to the truck. McBride testified that Burden continued to stab Green before running inside the house. McBride explained that, at that point, he followed Burden into the house after stepping over Green’s body. McBride testified that he and Burden then returned to the truck, whereupon McBride questioned Burden’s actions. McBride claimed that he complained to Burden at that time that he had been cut during the murder and that his blood was “all over the house” as a result. McBride testified that Burden stated that he had been hired to kill' Green, although McBride did not know how much Burden had been paid. McBride further testified that Burden had built an addition to his home, purchased a pool table, gotten married, and taken an out-of-state vacation after Green’s murder. McBride admitted, during cross-examination, that he had never before told anyone that Burden murdered Green.
¶ 7. Thereafter, the State called Burden in rebuttal. Burden testified that at the time of the murder, he made around $1,500 per week and that his wife is a nurse. Burden stated that he did not kill Green and that he used his own money to pay for the pool table and the addition to his house.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. As previously mentioned, our supreme court has set out the procedures that should be followed when appellate counsel believes that there are no arguable issues for appeal:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4),(7); see also [Smith v.] Robbins, 528 U.S. [259,] 280-81, 120 S.Ct. 746, 145 L.Ed.2d 756 [(2000)] (stating that “counsel’s summary of the case’s procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.”).
(2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing. See Robbins, 528 U.S. at 280-81, 120 S.Ct. 746, 145 L.Ed.2d 756; Turner [v. State ], 818 So.2d [1186,] 1189 [(Miss.2001)].
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief. Turner, 818 So.2d at 1189; cf. [People v.] Wende, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d [1071,] 1074 [(1979)].
*371 (4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal. Robbins, 528 U.S. at 280, 120 S.Ct. 746, 145 L.Ed.2d 756 (citing Wende, ... 158 Cal.Rptr. 839, 600 P.2d at 1074).
(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
Lindsey, 939 So.2d at 748(¶ 18) (footnotes omitted).
¶ 9. In the present case, McBride’s appellate counsel averred that he had reviewed and considered: (1) McBride’s arrest; (2) any violations of McBride’s right to counsel; (8) the trial transcript; (4) all rulings of the trial court; (5) any possible prosecutorial misconduct; (6) all jury instructions; (7) all exhibits; (8) the legality of McBride’s sentence; (9) the indictment by which McBride was charged; (10) any other pleadings in the record; (11) the effectiveness of McBride’s trial counsel; (12) any violation flowing from Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933);[2] and (13) “any other possible reviewable issues.” Thus, McBride’s appellate counsel asserts that he has reviewed everything required by Lindsey, as well as other potential appellate issues. Having done so, he finds no arguable issue for appeal; however, he requests that McBride be granted an additional forty days in which to file a pro se brief.
¶ 10. We note that appellate counsel asserts that he mailed McBride a copy of the appellate brief on May 11, 2009. Since that time, McBride has made no effort to file an appellate brief with this Court. Having likewise reviewed the record, we agree that there are no arguable issues for appeal. Therefore, we affirm McBride’s conviction and sentence.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY OTHER SENTENCE BEING SERVED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. In Lindsey v. State, 939 So.2d 743, 748(11 18) (Miss.2005), our supreme court set out the “procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal....”

. In Weathersby, the Mississippi Supreme Court held that a defendant’s version of events, where he or his witnesses were the only eyewitnesses to a homicide, must be accepted "unless substantially contradicted in material particulars by a credible witness ... or by the physical facts or by the facts of common knowledge.” Weathersby, 165 Miss. at 210, 147 So. at 482.