CARLTON, J.,
for the Court:
¶ 1. Alfred Stewart Jr. was convicted of sale of cocaine in the Lauderdale County Circuit Court and sentenced to twelve years in the custody of the Mississippi Department of Corrections (MDOC), with nine years suspended, followed by five years of post-release supervision. The trial court also ordered Stewart to pay a $5,000 fíne and court costs. Stewart appeals his conviction and sentence. Finding no arguable appellate issues in this case, and finding that the trial court’s judgment of conviction is supported by the record, we affirm Stewart’s conviction and sentence.[1]
FACTS
¶2. On November 17, 2009, Brandon Johnson contacted Officer Christopher Scott, a police officer with the Meridian Police Department assigned to the East Mississippi Drug Task Force, with information about a potential drug sale. Johnson had worked for the Task Force before as a confidential informant and was paid to make drug purchases. Officer Scott testified that Johnson informed him that he had contacted “BC, Boo Cooley,” and arranged to buy cocaine from him. Officer Scott knew “Cooley” to be Alfred Stewart.
¶ 3. Johnson went to the Task Force office, where officers searched him. Officer Scott testified that he conducted the search of Johnson, and he only required Johnson to remove his shirt. He also searched Johnson’s pants’ pocket and waistband.
¶4. The officers called Stewart and ordered $100 worth of cocaine. Officer Scott outfitted Johnson with a covert camera and an electronic listening device. The officers also searched Johnson’s car and installed an additional electronic listening device in the car.
¶ 5. The officers gave Johnson $100 in $20 bills. Johnson originally planned to meet Stewart at the Walmart on Highway 19 in Meridian. However, during the drive to Walmart, Stewart changed the meeting location, and Johnson instead met Stewart at the Quiznos near the Walmart. Johnson stopped once during his drive, at the request of police officers, so that he could adjust some of the equipment installed in his car.
¶ 6. Once Johnson arrived at Quiznos, he waited outside of his car for a few minutes before Stewart arrived. The video taken of the transaction between Johnson and Stewart shows Johnson walking up to Stewart’s car window, and the two then conversing. Counsel for Stewart asserts that the video does not reveal anything changing hands.
¶ 7. After Johnson left his meeting with Stewart, he drove to meet the police officers at the Task Force office. Officers contacted Johnson and advised him to slow down so that he did not arrive at the office before them, explaining that they needed to take immediate control of the drugs. Johnson testified that he still arrived at the Task Force about ten minutes before the officers arrived. When the officers arrived, Johnson turned over the cocaine.
¶ 8. Officer Scott admitted at trial that he failed to search Johnson’s groin area prior to his meeting with Stewart. Officer Scott also admitted that it was possible that Johnson could have hidden the drugs in that area prior to meeting with the officers.
*561 ¶ 9. Johnson testified that he began working with the police as an informant in 2005, after running into legal problems. Johnson confirmed that on the day at issue in this case when he purchased drugs from Stewart, officers searched him and searched his car at the Task Force office. Johnson planned to meet Stewart at Wal-mart, but when Johnson called Stewart to inform him that he was near Walmart, Stewart then advised him to instead come to the nearby Quiznos restaurant. Johnson explained that he met Stewart at Quiz-nos, bought $100 worth of cocaine, and left Quiznos after meeting with Stewart.
¶ 10. The defense called Roshanda McMillan to testify at trial. McMillan testified that she previously dated Stewart for about six months and was dating Johnson at the time he bought the drugs from Stewart, as alleged in the charges in this case. McMillan also dated Johnson previously for about four or five years, on and off. McMillan alleged that when Johnson discovered that she was dating Stewart, he grew angry. McMillan claimed that Johnson became violent with her when he thought she talked on the phone with Stewart. McMillan also testified that Johnson had Stewart “on deck” to set up.
¶ 11. The jury returned a verdict finding Stewart guilty of sale of cocaine, and the trial court sentenced Stewart to serve a term of twelve years in the custody of the Mississippi Department of Corrections (MDOC), with nine years suspended, and five years of post-release supervision. The trial court directed that after Stewart completed three years of incarceration, he would be placed under the supervision of the MDOC for the supervised portion of his sentence. The trial court also ordered that Stewart pay a fine of $5,000, a $300 crime-lab fee, court costs of $445.50, and an appearance-bond fee of $300, for a total of $6,055.50.
¶-12. Stewart now appeals his conviction and sentence. The Office of State Public Defender, Indigent Appeals Division, represents Stewart, and his attorney filed a Lindsey brief asserting that she found no error in the trial court proceedings. Lindsey v. State, 939 So.2d 743 (Miss.2005).
DISCUSSION
¶ 13. In Lindsey, the Mississippi Supreme Court implemented the following procedure to govern cases in which counsel for indigent defendants find no arguable issues in the record to present on appeal:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4), (7); see also Smith v. Robbins, 528 U.S. 259, 280-81, 120 S.Ct. 746, 145 L.Ed.2d 756 ... (2000) (stating that “counsel’s summary of the case’s procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.”).
(2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find *562 no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
Catchings v. State, 58 So.3d 58, 54-55 (¶ 6) (Miss.Ct.App.2011) (quoting Lindsey, 939 So.2d at 748 (¶ 18)).
¶ 14. The record reflects that Stewart’s appellate counsel complied with the procedures set forth in Lindsey. The brief complied with Rule 28(a)(1)—(4) and (7), including a statement of the case and a statement of the facts with record citations. Appellate defense counsel provided her finding that, based on a thorough examination of the record, the case presented no arguable issues on appeal that could be presented to this Court on Stewart’s behalf. Counsel specifically asserted that she reviewed the record concerning: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of Stewart’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prose-cutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing. Lindsey, 939 So.2d at 748 (¶ 18). Counsel confirmed that she sent a copy of the brief to Stewart, advising Stewart that, while she found no arguable issues in the record, Stewart had the right to file a pro se supplemental brief. Stewart failed to file a pro se brief.
¶ 15. The evidence in the record provides proof of the elements of the charged offense sufficient for the jury to find Stewart guilty beyond a reasonable doubt. See McGlasten v. State, 109 So.3d 620, 623-24 (¶¶ 8-11) (Miss.Ct.App.2013). We also acknowledge that determining the credibility of witnesses and resolving inconsistent statements lie within the province of the jury. Doe v. Stegall, 900 So.2d 363, 366-67 (¶ 15) (Miss.Ct.App.2003).
¶ 16. After our own review of the record, we similarly find no arguable appellate issues in this case. We also find that the evidence in the record supports Stewart’s conviction and the judgment of the trial court. See McGlasten, 109 So.3d at 623-24 (¶¶ 8-11). We therefore affirm Stewart’s conviction and sentence.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH NINE YEARS SUSPENDED, AND FIVE YEARS OF REPORTING POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J„ CONCURS IN PART WITHOUT SEPARATE OPINION.

. See Lindsey v. State, 939 So.2d 743, 748 (¶ 18) (Miss.2005).