# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01751-COA

**EARNEST BELL A/K/A ERNEST BELL A/K/A EARNEST BELL, JR.**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2016 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 02/20/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Ernest Bell was convicted of attempted felony motor-vehicle theft. Bell has appealed, and his counsel has filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). His counsel states he has searched the record but was unable to find any arguable issues for appellate review. Bell was given the opportunity to, but did not, file a pro se brief. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Otis Davis owned a red 1998 Pontiac Grand Prix, which he purchased for $1,500. On

the morning of July 21, 2015, Otis locked and parked the vehicle on the side of Thompson Road near his job site. That afternoon, Oeisha Davis, Otis's daughter, was driving on Highway 82, crossing over onto Thompson Road, when she saw a black vehicle parked near her father's Grand Prix. As she approached, Oeisha saw a man emerge from the driver's side of Otis's car. When she asked what he was doing, the man responded, "Mike sent me." At that point, Oeisha's mother, Mary Turner, pulled up to the scene. When Mary arrived, Oeshia saw the passenger-side door of Otis's car open and a "taller guy" emerge from the Grand Prix. Both men subsequently drove off in the black vehicle.

¶3.    Oeisha called the police. She gave a description and the license-plate number of the vehicle, as well as the direction the vehicle was headed. When Oeisha looked into the Grand Prix, she saw an object, later identified as a hammer, on the passenger-side floor. She also noticed damage to the steering column.

¶4.    Mary lives on Thompson Road. She was headed towards Highway 82 when she saw her daughter stopped on the side of the road near Otis's car. When Mary approached the Grand Prix, she saw a man exit the driver's side of Otis's vehicle and another man exit the passenger side. According to Mary, the man who exited the passenger side yelled, "let's go," and the two men left the scene in a black vehicle. Mary testified that the man she saw exit the passenger side of the Grand Prix was driving the black vehicle. She further testified that the black vehicle had a Leflore County tag.

¶5.    Mary testified that she saw "wrenches" inside the Grand Prix and noticed that the steering wheel was broken. She was presented a photo line-up, and she identified Bell as the

2

man she saw emerge from the passenger side of Otis's Grand Prix. Mary also identified a photograph of the Grand Prix and said that it was the vehicle Bell exited.

¶6. Deputy Jim Burton with the Montgomery County Sheriff's Office was informed of an automobile break-in. Based on the description and license-plate number of the vehicle, Burton located and stopped the vehicle that Bell was driving. Burton then arrested Bell and a male passenger.

¶7. At the sheriff's office, Bell was advised of his *Miranda* rights. Bell signed a waiver of those rights and gave a recorded statement. The recorded statement was admitted into evidence and played for the jury. In the statement, Bell explained that he saw the Grand Prix on the side of the road and parked his vehicle so that his passenger could get out and look at the car. Bell admitted he was there when Oeisha and Mary arrived. However, Bell denied talking to them and denied being in the Grand Prix or using a hammer to damage the car.

¶8. Otis testified that he occasionally parked his car on the side of Thompson Road when he went to work. Otis stated his car was not for sale and did not have a "for sale" sign on it. Otis further stated that he did not call anyone to come get the car and that no one had permission to enter his locked vehicle. Otis also testified that he did not own the hammer found in his car, he had never seen the hammer before, and he did not leave the hammer in his car. Otis testified that, although there was no sign of forced entry, his car was "tore up" on the inside.

¶9. Bell testified at trial. Bell explained that he bought and repaired vehicles, and he would then resell the vehicles for profit. Bell told the jury that he "wasn't trying to steal

3

[Otis's] car." Instead, he stopped to see whether the vehicle was for sale. However, Bell acknowledged that there was no "for sale" sign on the Grand Prix.

¶10. After the jury returned a guilty verdict, Bell was sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2014) to five years in the custody of the Mississippi Department of Corrections. Bell subsequently filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial. The motion was denied, and Bell timely appealed.

ANALYSIS

¶11. In *Lindsey*, the Mississippi Supreme Court implemented the following procedure for cases where appellate counsel does not believe any arguable issues exist for appellate review:

(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)].

(2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4) Should the defendant then raise any arguable issues or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

4

> (5) Once briefing is complete, the appellate court must consider the case on the merits and render a decision.

*Lindsey*, 939 So. 2d at 748 (¶18) (internal citations omitted).

¶12.    Here, Bell's counsel filed a brief in compliance with Rule 28 and said that he had "diligently searched the procedural and factual history . . . and scoured the record" but was unable to find any arguable issues that he could present in good faith for appellate review. Further, Bell's counsel claimed that he had "scrupulously" reviewed the entire record and transcript and considered the following: (a) the weight and sufficiency of the evidence, (b) speedy-trial issues, (c) challenges of jurors for cause, (d) all rulings of the trial court, (e) possible issues of ineffective assistance of counsel, (f) all jury instructions, (g) the admission of all evidence and exhibits, (h) the indictment, and (i) sentencing. Although Bell's counsel did not specifically assert that he had examined the reason for and the circumstances surrounding Bell's arrest or possible prosecutorial misconduct, he did say that he had reviewed the procedural and factual history of the case, as well as the indictment and transcript. Bell's counsel specifically concluded that, pursuant to *Lindsey*, he found no arguable issues for appellate review.

¶13.    Bell's counsel sent a copy of the brief to Bell and informed Bell that although he found no arguable issues in the record, Bell had the right to file a pro se brief. The record shows Bell was given forty days, but did not file a brief.

¶14.    We have independently reviewed the record. We find no arguable issues that require supplemental briefing or further review. We therefore affirm the judgment.

¶15.    **AFFIRMED.**

5

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**