# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-00656-SCT

*LARRY KNIGHT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2018 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| TRIAL COURT ATTORNEYS: | LEIGH ANNE KETTLEMAN CADE |
| | ANGELA TERINA CARPENTER |
| | HERBERT SMITH CARRAWAY, III |
| COURT FROM WHICH APPEALED: | SHARKEY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | PHILLIP W. BROADHEAD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Larry Knight was convicted of one count of molestation and was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Knight appealed, and his attorneys filed a brief under ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005). In the brief, Knight's attorneys state that they searched the record but were unable to find any arguable issues for appellate review. Knight was given the opportunity to file a pro se brief, but he declined. This Court has reviewed the record and finds no error. Accordingly, we

affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Knight, a Mississippi native, lived in Illinois for several years. While in Illinois, Knight began an online relationship with Lisa Cartlidge. Knight eventually moved to Sharkey County, Mississippi, in order to pursue his relationship with Lisa. Lisa and her two minor children, Mary and Betsy, moved in with Knight.[1]

¶3.     On Sunday, August 7, 2016, Mary and Betsy spent the day with their maternal relatives because Lisa and Knight had to work. Betsy attended church with her aunts and cousins. Mary was not feeling well, so she stayed at her grandmother's house. After church, Mary and Betsy, along with other family members, went to their aunt's house for lunch.

¶4.     During lunch, one of Mary's aunts noticed that Mary was acting "out of the ordinary" and asked her what was wrong. Mary did not initially respond. When her aunt asked again what was wrong, Mary started to cry and advised that Knight had inappropriately touched her. Betsy, who was in the same room as Mary and overheard what Mary said about Knight, also advised that Knight had inappropriately touched her. The allegations regarding Mary and Knight were later reported to the Department of Child Protection Services (CPS).

¶5.     On August 8, 2016, Jessie Williams, a social worker with CPS, received a report of abuse about Mary and Knight, but she received no report about Betsy. Williams interviewed

---

[1] For privacy purposes, we substitute fictitious names for the two minor children. Mary was born in 2004. Betsy was born in 2006.

2

Mary, who advised that Knight "had been touching her inappropriately by licking her breasts and touching her between her legs." Williams also spoke with Betsy, who said that she had not seen or witnessed anything between Mary and Knight. Betsy did not disclose any inappropriate touching by Knight.

¶6. Charlene Barnette, a forensic interviewer with the Mississippi Children's Advocacy Center, interviewed Mary on September 12, 2016. According to Barnette, Mary was "forthcoming" and "consistent" and "used a narrative practice and episodic memory in her details that she provided." During the interview, Mary used anatomical drawings and advised that Knight squeezed and licked her breasts and touched the outside of her genital area with his hand. Throughout her investigation, Barnette found no signs that Mary had been coached or manipulated to give certain answers. Upon completion of the interview, Barnette recommended that the police department and CPS continue their investigation of the abuse allegations. She further recommended that Mary have no contact with Knight and that Mary receive immediate therapy.

¶7. Jennifer Weaver, the clinical director for the Mississippi Children's Advocacy Center and forensic interviewer, separately interviewed Betsy on October 11, 2016. According to Weaver, Betsy was "very forthcoming with episodic details as well as sensory details about what happened to her and her sister" and "was consistent throughout the interview." Weaver presented Betsy with an anatomical drawing of a "little boy and a little girl age appropriate to the child." On the female diagram, Betsy circled the breast area and the vaginal area. On

3

the male diagram, when asked what Knight used to touch her, Betsy circled the hand. When asked what Knight used to touch Mary, Betsy circled the penis. Additionally, Betsy stated that when Knight would put Mary on his lap, his penis would "pop up." Based on the interview, Weaver recommended that the police department and CPS continue their investigation. Like Barnette, Weaver recommended that Betsy have no contact with Knight and that she receive therapy.

¶8. Lieutenant Herbert Ceaser, an investigator with the Rolling Fork Police Department, interviewed Knight, who denied all allegations. Knight advised that he loved Mary and Betsy as if they were his own. Knight acknowledged that "[s]ometimes [Mary and Betsy] would come and sit on his lap" and he would ask them how their day was and "things of that nature." When asked why Mary and Betsy would make such allegations, Knight responded that Mary "probably was mad because she was caught at . . . home with a 12-year old boy."

¶9. Knight was indicted on Count I, molestation of Mary, and Count II, molestation of Betsy. At trial, Williams, Barnette, and Weaver testified about their interviews with Mary and Betsy. Lieutenant Ceaser testified about his investigation of and interview with Knight.

¶10. Mary testified that Knight "touched [her] . . . [i]nside [her] pants and in [her] bra, inside [her] bra" with his hand. Mary further testified that she told her mother about the touching, but her mother "said something about [how] she didn't see it," so Mary "just didn't say nothing else."

¶11. On cross-examination, Mary acknowledged that she later told her mother that Knight

did not touch her but stated that she "thought that [her mother] was going to get mad." When asked why she told her mother that Knight did not touch her, Mary responded, "I told her, yes, he did touch me[,] but she didn't never believe me."

¶12. Betsy testified that Knight touched her "on [her] breast" with "[h]is hand." She explained that Knight touched her "[o]n top of [her] clothes." When asked why she did not disclose the touching to Williams, Betsy responded that she was "scared" that her mother would be "mad and whip" her.

¶13. Knight was found guilty of Count I, molestation of Mary, and not guilty of Count II, molestation of Betsy. Knight was sentenced to serve fifteen years in the custody of the MDOC. He was further ordered to pay a $3,000 fine, $104 in court costs, $280.50 in state assessments, and a $200 district attorney investigative fee. Knight then filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Knight timely appealed to this Court.

## DISCUSSION

¶14. In *Lindsey*, this Court implemented the following procedure for cases in which appellate counsel does not believe any arguable issues exist for appellate review:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)].
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire

5

trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4) Should the defendant then raise any arguable issues or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on the merits and render a decision.

*Lindsey*, 939 So. 2d at 748 (footnote omitted) (citations omitted).

¶15. Here, Knight's attorneys filed a brief in compliance with Rule 28 and stated that they had "diligently researched the factual basis, the procedural history, and made a legal analysis of the matters attending the trial of this criminal case," and that they had "scoured the record searching for any arguable issues that could be presented in good faith to the Court on behalf of [Knight] for appellate review," but that they had "found none." Their review included (a) the reason for Knight's arrest and the circumstances surrounding the arrest; (b) the entire trial transcript; (c) the clerk's papers filed with this Court; (d) all rulings of the trial court; (e) all exhibits, whether admitted into evidence or not; (f) all jury instructions; (g) any possible prosecutorial misconduct; (h) possible misapplication of the law in sentencing; (I) the indictment and all pleadings in the record; (j) all motions and rulings; (k) potential discovery violations; (l) exclusion by the trial court of an audio recording; (m) post-trial

6

motions filed by defense counsel; and (n) any possible ineffective-assistance-of-counsel issues. Although Knight's attorneys did not specifically assert that they had considered "any possible violations of [Knight]'s right to counsel," the attorneys reviewed the entire trial transcript and all pleadings in the record. They concluded that there were no issues that they could, in good faith, present to this Court for appellate review.

¶16.     Knight's attorneys sent a copy of the brief to Knight and informed him that, although they found no arguable issues in the record, he had the right to file a pro se brief. By order entered November 20, 2018, this Court granted Knight forty days to file a pro se appellant's brief. Knight failed to file a pro se brief within the forty days. On February 4, 2019, Knight moved for additional time to file a pro se brief. This Court granted Knight's motion on February 6, 2019, and allowed Knight forty days to file a pro se appellant's brief. Knight failed to file a pro se brief within the additional forty days granted by this Court.[2]

¶17.     This Court has independently reviewed the record and finds no arguable issues that require supplemental briefing or further review. Accordingly, we affirm the trial court's judgment.

¶18.     **AFFIRMED.**

        **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[2] On March 19, 2019, Knight filed with this Court a copy of a pro se "petition to vacate illegal sentence and to quash indictment statutory violation and ineffective assistance of counsel" that he had filed in the trial court. In the pro se petition, Knight had asked the trial court to vacate his molestation charge and to quash the indictment.

7