# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-00682-SCT

*DARRELL WALTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/2019 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | AZKI SHAH |
| | ALISON LESLIE FLINT |
| | JAMIE MARIE BANKS |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Darrell Walter was convicted by a jury of capital murder and aggravated assault, both enhanced by the use of a firearm. He was sentenced to life without parole for capital murder, ten years for aggravated assault, and an additional five years for the aggravated-assault firearm enhancement to run concurrent to the ten-year sentence. Walter's counsel filed a brief under *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Walter did not file a pro se brief.

Finding no error, we affirm Walter's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2.     At approximately 11:15 p.m. on the evening of August 5, 2017, Walter and Dontavius Applewhite entered a building where several men were gambling. Soon thereafter, many shots were fired, and Kelvin Dwayne Blackburn was killed. Early August 6, 2017, the Lambert Police Department received a call regarding a possible deceased person. Upon arriving at the scene, officers discovered the body of Blackburn. The State Medical Examiner's Office determined that Blackburn's cause of death was multiple gunshot wounds.

¶3.     At the trial, Mack Riley testified that the night of the shooting, he was shooting dice with several other men including David Jackson and Blackburn. While they were gambling, other people came into the building including Walter and Applewhite. After a couple of hours, Walter approached Blackburn at the craps table with a gun and said, "Y'all know what this is." Blackburn grabbed at Walter and his gun, and they began struggling. Riley testified that he saw Walter shoot Blackburn several times. Riley testified that after Blackburn fell to the floor, Walter continued to empty his gun into Blackburn. After Riley heard several shots, he saw Walter run out the door. Riley then testified that Applewhite started shooting as he ran toward the craps table and grabbed the money off the table. Riley testified that when Applewhite got to the door, "he held the gun down and just continued to shoot until . . . he didn't have any more shots and he run [sic] out the door."

¶4.     David Jackson, who owned the building where the men were playing craps and where the shooting occurred, testified that while he and other men were shooting dice, Walter and

2

Applewhite were standing behind the men playing dice. Jackson told the men to move while they were playing. Jackson testified that a few seconds later, Walter came back to the table with a gun and pointed it at Blackburn. Jackson saw Blackburn grab at Walter's gun, and the two men began tussling. Jackson heard the gun go off, and he ran to hide in his kitchen. When the shooting stopped, he came back into the room and saw Blackburn lying on the floor. Jackson testified that he only saw Walter with a gun.

¶5. Jason Roberson testified that he saw Walter shoot Blackburn four or five times in the head while Blackburn was lying on the ground. He also testified that he saw Walter going through Blackburn's shirt pocket, where Blackburn had placed his winnings, while Blackburn was on the ground. Roberson testified that Blackburn had between $3,000 and $5,000 in his hand and shirt pocket. During the melee, Roberson was shot in his arm.

¶6. Elliott Hunt also testified that Walter attempted to steal Blackburn's money during the game by brandishing a gun at him. Hunt testified that he did not see anyone else with a gun.

¶7. The State rested, and Walter moved for a directed verdict. The motion was denied. The defense presented no witnesses in its case-in-chief.

¶8. The jury found Walter guilty of capital murder with a firearm enhancement and of aggravated assault with a firearm enhancement. Walter was sentenced to life imprisonment without parole for capital murder and ten years for aggravated assault. Walter was also given an enhanced penalty of five years for the use of a firearm during the aggravated assault to run concurrently to the ten-year sentence.

¶9. Walter filed posttrial motions, arguing that the evidence was insufficient to support

the guilty verdicts and that the weight of the evidence did not support the verdicts. Walter also argued that the trial court committed numerous reversible errors. Walter contended that the trial court erred 1) by denying a proposed jury instruction for the lesser-included offense of manslaughter, 2) by overruling his objection to the State's jury instruction that included aiding and abetting language, 3) by overruling his objection to statements made by the State that "Defendant would have shot Jason Robertson [sic] in the face if he (Defendant) had seen Jason Robertson [sic] bleeding due to a wound to his left arm," 4) by failing to grant his motion for a directed verdict, and 5) by admitting "gruesome" photographs rendering the trial fundamentally unfair. Walter amended his motion to include an allegation of juror misconduct. Walter contended that one of the jurors was close friends with one of the State's witnesses. Walter argues that had the relationship been disclosed, the juror would have been struck. Walter prayed for a "new trial given this unrevealed relationship which rendered Defendant's trial fundamentally unfair . . . ." The trial court denied Walter's posttrial motions.

## ANALYSIS

¶10.    In *Lindsey*, this Court outlined a procedure that appellate counsel must follow when no appealable issues are apparent from the record on appeal. *Lindsey*, 939 So. 2d at 748. As this Court stated as recently as March, an attorney must

> (1) . . . [F]ile and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4), (7);
>
> (2) . . . [C]ertify [in the brief] that there are no arguable issues supporting the client's appeal, and [that the attorney] has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the

4

arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing[; and]

(3) . . . [S]end a copy of the brief to the defendant, inform the [defendant] that counsel could find no arguable issues in the record, and advise the [defendant] of his or her right to file a pro se brief.

*Woodson v. State*, 292 So. 3d 221, 223 (Miss. 2020) (quoting *Lindsey*, 939 So. 2d at 748).

¶11.    We find that Walter's attorney complied with the requirements of *Lindsey*. Counsel filed a brief stating that he "diligently searched the procedural and factual history of this criminal action and scoured the record," finding no arguable issues for appeal. Counsel specifically asserts he considered and reviewed (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violation of Walter's right to counsel; (c) the entire trial transcript; (d) the rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions, including the right to an instruction on Walter's theory of the case; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing; (i) the indictment and all pleadings in the record; (j) any possible ineffective-assistance-of-counsel issues; (k) any speedy-trial issues; (l) any Fourteenth Amendment Due Process issues; (m) evidence of other bad acts; and (n) any other possible reviewable issues. Counsel also stated, and this Court confirmed, that he mailed a copy of his brief to Walter, notifying him that he found no arguable issues and that Walter had a right to file a pro se brief. Walter did not file a pro se brief.

¶12.    The evidence sufficiently supports Walter's convictions of capital murder with firearm

5

enhancement and aggravated assault with firearm enhancement. The State was required to prove that Walter killed Blackburn during the commission of a robbery as set forth in Mississippi Code Section 97-3-19(2)(e) (Rev. 2014) and that he caused bodily injury to Jason Roberson with a deadly weapon in violation of Mississippi Code Section 97-3-7(2)(a)(ii) (Rev. 2014). Sufficient proof established that Walter shot and killed Blackburn during the commission of a robbery and that Walter shot Roberson with a deadly weapon.

## CONCLUSION

¶13.    After a review of the record, this Court finds that the convictions and sentences should be affirmed. Walter's counsel complied with this Court's holding in *Lindsey* in submitting his brief. The State proved the requisite elements of capital murder with firearm enhancement and aggravated assault with firearm enhancement. Therefore, we affirm Walter's convictions and sentences.

¶14.    **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

6