# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-00331-SCT

*RANDY CAL LINDSEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2003 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | SUPPLEMENTAL BRIEFING ORDERED - 03/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WALLER, P.J., GRAVES AND DICKINSON, JJ.

### WALLER, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Randy Cal Lindsey appeals from his conviction in Scott County Circuit Court of burglary of a business and his sentence as a habitual offender to seven years without parole in the custody of the Mississippi Department of Corrections. Lindsey's appellate attorney filed a brief arguing that Lindsey's appeal is without merit and cited to our decision in *Turner v. State*, 818 So. 2d 1186, 1189 (Miss. 2001) (providing procedure to be followed by attorneys

who believe indigent client's appeal has no merit), *overruling **Killingsworth v. State***, 490 So. 2d 849 (Miss. 1986).[1]   Lindsey now comes before the Court pro se.

## FACTS

¶2.     After being dispatched to Cox's Chevron in response to a burglary alarm, Officers Will Jones and Russell Ellis of the Forest Police Department discovered that someone had broken the glass in the front door with a brick and stolen seven cartons of Marlboro cigarettes.  Upon arriving at the scene around 5 a.m., Ellis questioned Fonzy Odom, who was standing in the area. Odom told Ellis he had seen two black males at the scene and indicated the men went down West Fourth Street.[2]   After going down the street, Ellis noticed Randy Lindsey under a car port and tried to question him.   When Lindsey behaved defensively, Ellis took him into custody. Upon returning to the car port to investigate, Ellis discovered seven cartons of Marlboro cigarettes inside a stack of tires close to where Lindsey had been standing when Ellis spotted him.

¶3.     The surveillance tape revealed that the person who stole the cigarettes wore the same outfit that Lindsey was wearing that morning.   Furthermore, after the police took Odom into custody, he altered his previous statement and told the police that after the two black males ran off, Lindsey came up with the cigarettes in hand and said, "Fonzy, I got what you need."

---

[1]***Turner*** was our response to United States Supreme Court precedent as well as Fifth Circuit criticism of our former ***Killingsworth*** procedure which consisted of the following: "Where counsel regards the appeal without merit and deems it his obligation to so state to the Court, the full protection of the rights of the accused require that he receive a copy of the representation counsel has made to the Court and be furnished a reasonable opportunity to file his own comments and raise any additional points that he chooses." ***Killingsworth***, 490 So. 2d 849, 851 (Miss. 1986).

[2]At the time of trial, Odom was in jail for an unrelated charge.

¶4. At trial, Lindsey admitted taking the cigarettes, but denied breaking into Cox's Chevron. He explained,

> I went behind the Chevron and used the bathroom. As I was getting ready to come around the corner the alarm went off, so I panicked at first, and I said, 'Well, hey, I ain't did nothing [sic].'. . . So, when I go around front I see the front glass broken, and I said, 'Well, s***, this is opportunity[.]' So I squatted down and went on into the store . . . and got some cigarettes and ran behind the store to a friend's house[.]

¶5. The following exchange took place between the prosecutor and Lindsey regarding Lindsey's partial admission.

> MR. TURNER: [I]f I understand your story correctly, you're saying somebody else just came by and did the breaking for you, but they just - they didn't go in. So, you fortuitously came by and saw the door had already been broken and said, 'Well, if I can sell that to a jury if I get caught, the worst thing they'll get me for is maybe just a little petty larceny or something.' Is that kind of what your thinking process was?
>
> MR. LINDSEY: No sir, that's not my thinking process. When I came around the building you could see someone else leaving. I didn't know if it was the two men or what, but you could kind of tell from the corner there was somebody running . . . away. So, that was my chance to get me some cigarettes[.]

¶6. The State presented no evidence revealing who broke the glass door with the brick. After the State rested, Lindsey's trial counsel moved for a directed verdict, arguing the State failed to prove all the elements of burglary beyond a reasonable doubt. The trial court overruled the objection, and after presentation of the defense, the jury unanimously found Lindsey guilty of burglary. Lindsey's attorney filed a brief purportedly complying with the *Turner* decision and notified Lindsey of his right to file a brief pro se.

## ANALYSIS

¶7. In his pro se brief, Lindsey raises several grounds of reversible error: (1) he has unconstitutionally been denied assistance of counsel at the appellate stage; (2) the State failed to prove beyond a reasonable doubt Lindsey committed the crime of burglary; (3) the trial court committed various errors in denying a continuance as well as denying him a trial transcript; (4) he received ineffective assistance of counsel at trial; and (5) the Mississippi Supreme Court "error [sic] by not entertaining petitioner [sic] unexhaustion [sic] claim." Finding additional briefing warranted in accord with Lindsey's complaints regarding issue one, we direct further briefing consistent with this opinion.

¶8. Lindsey cites the Fourteenth Amendment as well as applicable Supreme Court precedent and essentially complains pro se that he has been denied his constitutional right to counsel as a result of his attorney's failure to properly represent him before this Court. The State acknowledges the legitimacy of Lindsey's argument, and in its response, highlights the unconstitutionality of our procedure for addressing potentially frivolous claims of indigent defendants.[3] We therefore find Lindsey has adequately raised the issue and address this argument on its merits.

¶9. In *Smith v. Robbins*, 528 U.S. 259, 273-74, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the United States Supreme Court, speaking through Justice Thomas, stated that although the Court had previously laid down a "prophylactic framework" to vindicate the Fourteenth

---

[3]We commend the State for acknowledging this problem, and note that it has previously done so in the past. *See Brewer v. State*, 834 So. 2d 36, 38 (Miss. 2003)(noting State's request that we revisit *Turner* but declining to do so for procedural reasons); *accord Evans v. State*, 813 So. 2d 724, 726-27, 729 (Miss. 2002). In specifically discussing the constitutional deficiencies in our current procedure, it has greatly assisted the Court in refining our jurisprudence.

Amendment right to appellate counsel, it "expressly disclaimed any pretensions to rulemaking authority for the States in the area of indigent criminal appeals." Instead, the Court stated, "States may - and, we are confident, will - craft procedures that, in terms of policy, are superior to, or at least as good as" the framework the Court introduced in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

¶10.    Before reviewing California's procedure, the Court stated,

> [I]t is important to focus on the underlying goals that the procedure should serve - to ensure that those indigents whose appeals are not frivolous receive the counsel and merits brief required by *Douglas*, and also to enable the State to 'protect itself so that frivolous appeals are not subsidized and public moneys are not needlessly spent.'. . . For although, under *Douglas*, indigents generally have a right to counsel on a first appeal as of right, it is equally true that this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal.

*Robbins*, 528 U.S. at 277-78 (citations omitted).

¶11.    In its survey of the procedures which it has found unconstitutionally inadequate in past cases, the Court noted four instances in which it had found State procedures to be inappropriate: (1) when the procedure requires that a defendant be "unlikely to prevail on appeal," rather than requiring the appellate court or counsel to find the appeal is frivolous; (2) when a procedure permits appellate counsel to withdraw his or her representation of the indigent defendant and the appellate court decide the appeal without appointing new counsel;[4] (3) when the procedure allows appellate counsel to submit a letter asserting the "bare

---

[4]The Court also noted that it would be especially egregious for an appellate court to decide the appeal without counsel if the court discovered arguable issues. *Robbins*, 528 U.S. at 280 (citing *Penson v. Ohio*, 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)).

conclusion" that the appeal is without merit; and (4) when the procedure only provides one level of review. *Id.* at 279.

¶12. In *Turner*, we approved the following procedure for use when defendant's appellate counsel believes an indigent defendant's appeal to be frivolous:

> The appellate counsel must:
> (1) determine that the defendant is "unlikely to prevail on appeal."
> (2) file a brief indicating "that he scoured the record thoroughly[,]" and "refer[]" to anything in the record that might arguably support the appeal[,]" and
> (3) advise client of his right to file a pro se supplemental brief.
> At this point, the appellate court shall then make its own independent review of the record, in the manner followed in all other cases.

*Turner*, 818 So.2d at 1189 (citations omitted).

¶13. Today, based on the sound logic and admonition of the Supreme Court's holding in *Robbins*, we overrule *Turner* in part.

¶14. First, by requiring appellate counsel to determine the client is merely "unlikely to prevail on appeal," we inadvertently endorsed one of the very problems which the Supreme Court found to render such a procedure unconstitutional. It is more than a matter of semantics that led the *Robbins* Court to draw a distinction between a claimant who is unlikely to prevail on appeal and one whose claims are altogether frivolous. A claim is frivolous when it is "lacking in arguable issues." *Robbins*, 528 U.S. at 279-80. Although Lindsey may indeed be unlikely to prevail in this appeal, that does not mean his arguments reach the level of frivolity (i.e. that he presents no arguable issues), and requiring his attorney to make such an argument explicitly violates *Robbins*.

6

¶15.  The second problem with the *Turner* procedure is less obvious than the first. According to *Robbins*, a procedure is unconstitutional where either the appellate court allows counsel to withdraw before the court determines whether the appeal is frivolous or where a procedure makes no provision for the court to receive a brief on the merits after finding arguable issues.    *Id.* at 280.   Under *Turner*, when appellate counsel files a brief with the appellate court, the client is concurrently advised of his or her right to file a pro se brief. *Turner*, 818 So. 2d at 1189.   Thereafter, the appellate court must "make its own independent review of the record."    *Id.*   This  procedure potentially leaves the impression that once the attorney has filed the *Turner* brief, he or she is discharged of his or her duty to represent the indigent client.   It is true that *Turner* does not explicitly state the attorney  is relieved of his or her duties prior to the appellate court's determination of whether defendant's appeal is frivolous.   But neither does the *Turner* rule expressly state there is any further obligation after the attorney has submitted the appellate brief, even if a nonfrivolous issue exists in the record.

¶16.   In the case at hand, Lindsey's appellate counsel filed a one-and-a-half page brief on his behalf, merely asserting that he had complied with *Turner* and that he regarded Lindsey's appeal to be without merit since it was "unlikely to prevail on appeal."   He then requested twenty-five days for Lindsey to file a pro se brief.   The brief filed on behalf of Lindsey was deficient even under *Turner* since it did not refer to "anything in the record that might arguably support the appeal."   *Turner*, 818 So. 2d at 1189.  However, it is understandable how *Turner*'s requirement that the attorney determine his client is "unlikely to prevail on appeal" lends itself to the assumption by attorneys that they have no obligation to make further contentions in their

7

briefs to the appellate court. We conclude the better practice is to have a procedure which requires supplemental briefing where appellate counsel has filed an inadequate brief. *Robbins*, 528 U.S. at 280 (citing *Anders v. California*, 386 U.S. at 740, n.2 and *People v. Wende*, 600 P.2d 1071, 1075 n.3 (Cal. 1979)).

¶17.   We therefore overrule *Turner* in part, rectifying the constitutional problems with our procedure governing appeals by indigent criminal defendants.   We first note that, under the sound guidance of the Supreme Court, we refrain from replacing the requirement that appellate counsel determine that defendant is "unlikely to prevail on appeal" with a requirement that appellate counsel determine that all of the client's claims are frivolous.   The Court rightly noted the conundrum faced by appellate attorneys forced to make any assertions under *Anders* procedures about the frivolity of their client's argument: "[There is] some tension both with counsel's ethical duty as an officer of the court (which requires him not to present frivolous arguments) and also with his duty to further his client's interests (which might not permit counsel to characterize his client's claims as frivolous)." *Robbins*, 528 U.S. at 281-82 (footnote omitted); *see also* Miss. R. Prof'l Conduct 3.1 & cmt. (2004) (barring attorneys from making frivolous arguments and defining such arguments as those where attorney is "unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.").   The Court then commended California's effort to rectify this problem by (1) "not requiring counsel to explicitly describe the case as frivolous" and (2) by allowing attorneys

who determine that a case is frivolous to limit their briefs to a statement of the facts and applicable law. ***Robbins***, 528 U.S. at 282 (citing ***People v. Wende***, 600 P.2d at 1073.[5]

¶18. In accord with ***Robbins***, we overrule ***Turner*** in part and implement the following procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4),(7);[6] *see also* ***Robbins***, 528 U.S. at 280-81 (stating that "[c]ounsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.").
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing. *See* ***Robbins***, 528 U.S. at 280-81; ***Turner***, 818 So. 2d at 1189.
>
> (3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the

---

[5]By no means do we imply that an indigent client has received unconstitutional representation because his or her attorney referred to the client's claims as "frivolous." Instead, this particular aspect of our opinion seeks to alleviate any potential concerns an attorney may have about compliance with Mississippi Rules of Professional Conduct and has no effect on the constitutional rights of indigent clients.

[6]We note that since counsel does not actually present an argument when filing a ***Turner*** brief, it would be impossible to comply with Mississippi Rule of Appellate Procedure 28(a)(5)-(6).

client of his or her right to file a pro se brief. *Turner*, 818 So. 2d at 1189; *cf.* *Wende*, 600 P.2d at 1074.[7]

(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal. *Robbins*, 528 U.S. at 280 (citing *Wende*, 600 P.2d at 1074).

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

¶19.    Although this procedure more effectively implements the constitutional mandates of *Robbins*, we do not create or imply a right to post-conviction relief for those cases decided under *Turner*. In spite of its flaws, the *Turner* procedure at least required that we conduct an independent review of the record. *Turner*, 818 So.2d at 1189. In doing so, our appellate review afforded the protection to indigent clients they might not have otherwise received from their attorneys and satisfies any concerns we may have otherwise had as to whether indigent clients received constitutionally adequate representation under *Turner*. *See, e.g.*, *Sayles v. State*, 823 So. 2d 537, 540-41 (Miss. 2002) (raising issue of sufficiency of evidence after independent review of record although neither appellate counsel nor appellant raised issue on appeal).

¶20.    The purpose of applying more stringent protective measures is simply to safeguard the constitutional right to counsel which is afforded to indigent criminal defendants throughout the entirety of appellate proceedings. *See Robbins*, 528 U.S. at 280. Although we remain steadfast

---

[7]California's *Wende* procedure allows appellate counsel to withdraw when it finds the attorney has adequately discharged his duty to set forth the facts and present the applicable law. *See Wende*, 600 P.2d at 1073-74. We decline to adopt this approach in order to avoid temporarily leaving the defendant without the benefit of counsel and possibly necessitating the appointment of new counsel.

in our refusal to subsidize frivolous appeals, we also recognize the essential role of appellate attorneys in helping us accomplish this goal. Attorneys who thoroughly brief the claims of indigent appellants not only provide invaluable assistance to their clients and appellate courts, they eliminate the costs to the State that will inevitably result when attorneys fail to comply with the requirements articulated today. Because Lindsey's attorney has submitted a brief simply concluding that his client's claim has no merit, we order him to submit a supplemental brief in compliance with this opinion.

## CONCLUSION

¶21. We overrule the *Turner* procedure in part in order to afford adequate and effective counsel to those indigent clients whose attorneys do not believe they have arguable issues to present the appellate court. We direct that the briefing schedule in this appeal be reopened for additional briefing consistent with this opinion. The Clerk of this Court shall notify the parties of the new briefing schedule. *See* M.R.A.P. 31.

¶22. **SUPPLEMENTAL BRIEFING ORDERED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**