# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01756-COA

**CORNELIUS CANNADY, SR. A/K/A**                    **APPELLANT**
**CORNELIUS CANNADY A/K/A CORNELIUS G.**
**CANNADY**

**v.**

**STATE OF MISSISSIPPI**                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, FALSE PRETENSE, AND COUNT II, CONSPIRACY TO COMMIT FALSE PRETENSE, AND SENTENCED AS A HABITUAL OFFENDER TO TEN YEARS ON COUNT I AND FIVE YEARS ON COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 07/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE, FAIR AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In November 2015, Cornelius Cannady was convicted by a jury in the Madison

County Circuit Court of false pretense and conspiracy to commit false pretense.  Cannady

was sentenced as a habitual offender to serve a term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC)—ten years for the false-pretense count, and five years for the conspiracy count, with the sentences to run consecutively to one another. Cannady moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied the motions. Cannady's appeal was assigned to the Office of the State Public Defender, Indigent Appeals Division (IAD). In his appellate brief, Cannady's attorney asserted that he had conducted a good-faith inquiry into arguable issues for appeal, but ultimately could find none. Having reviewed the record, we also find no meritorious issues and affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     After extensive investigation, Cannady was indicted on one count of false pretense, and one count of conspiracy to commit false pretense—as a habitual offender.

¶3.     At trial, Investigator Jason Rudd, with the Ridgeland Police Department, testified that Cannady was the mastermind behind a check-cashing scheme involving several individuals. Rudd's testimony revealed that fraudulent payroll checks—from nonexistent businesses—were cashed at All American Check Cashing (All American). Rudd explained that Jeremiah Jackson, Charwona Page, and Jason Johnson were involved in this scheme and that Cannady was the ringleader. Cannady would drive the various individuals around in his van and have them cash the fake payroll checks. In return, the individuals would receive approximately $100 for each check they cashed. After Cannady was arrested, Rudd found two cell phones and a bank card belonging to Page's fake business, CP Sales and Services,

2

in his car.

¶4.    Russell Boyette, an employee of All American, testified that on October 7, 2014, Jackson, Johnson, and Page came into his business—at two different times—and presented three different fraudulent checks to be cashed. The check Page cashed was in the amount of $681.20, and the two checks Jackson and Johnson cashed totaled over $1,000. Later, All American called to verify the authenticity of the checks, and after being told they were legitimate, cashed them. It was only a few days later that they learned that the checks were actually fraudulent. On cross-examination, Boyette admitted that Cannady himself never came into All American. And Boyette further testified that he was not aware that Cannady ever attempted to cash any checks himself.

¶5.    Edward Keys testified that Cannady, whom he knew as "Check Man," approached him about the opportunity to make money by cashing checks and opening bank accounts. Cannady took him to open a checking account for Keys Automotive, and then to the Secretary of State's office to incorporate the business. Keys admitted that he never had a car-lot business—or even an office or phone number. Keys testified that he thought the phone number associated with the business was actually Cannady's. And although they used Keys's address and phone number to open the checking account, Cannady paid the initial deposit of $250, and Keys gave the debit cards and checks associated with the account to Cannady; Keys never used them himself. Keys further testified that once he "figured out it was a scam," he attempted to close the checking account, but the bank would not allow him to because it was so overdrawn.

¶6. Page also testified that she knew Cannady as "Check Man," and that the scheme was his idea. She testified that when someone would call the phone number for Keys Automotive, it was set up to call Cannady's phone. Page told the jury that Cannady took her to open up "CP Sales and Service," which was a fictitious business, and provided her with the funds to open the account. And like Keys, Page gave Cannady the debit cards tied to the account. Page testified that on October 7—when she went to cash the fraudulent checks—she went at the direction of Cannady, and they both knew there was no money in the account. She also testified that Cannady "had his computer and his printer with him 24/7," and she witnessed him print fake checks.

¶7. After the State rested, Cannady moved for a directed verdict; this motion was denied. Cannady presented no witnesses and was found guilty of both counts. Cannady filed a motion for a JNOV or, in the alternative, a new trial. The circuit court denied his motion. Cannady appealed. His case was assigned to the IAD.

¶8. Cannady's IAD attorney submitted a brief stating that he was unable to find any arguable issue for appeal despite a good-faith inquiry into Cannady's case. The IAD attorney listed eleven matters that he had considered, reviewed, and included in his inquiry. He acknowledged his willingness to prepare and submit supplemental briefing on any issues requested by this Court. The IAD attorney also requested that the Court grant Cannady forty days of additional time in which to file a pro se brief should he desire to do so. After being granted the additional forty days, Cannady filed a pro se brief. In his brief, Cannady alleges the following: insufficient evidence; a verdict against the overwhelming weight of the

4

evidence; judicial and prosecutorial misconduct; ineffective assistance of counsel; and an illegal sentence.

## DISCUSSION

¶9. The case of *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), governs this appeal. In *Lindsey*, the Mississippi Supreme Court promulgated procedures an attorney must follow when the "appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Id.* at 748 (¶18). When this situation arises, an attorney must:

(1) [F]ile and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4), (7);

(2) [C]ertify [in the brief] that there are no arguable issues supporting the client's appeal, and [that the attorney] has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing[; and]

(3) [S]end a copy of the brief to the defendant, inform the [defendant] that counsel could find no arguable issues in the record, and advise the [defendant] of his or her right to file a pro se brief.

*Lindsey*, 939 So. 2d at 748 (¶18) (citations omitted).

¶10. Cannady's counsel has complied with the requirements of *Lindsey*. Counsel further petitioned this Court for an extension of time for Cannady to submit a pro se brief. The extension was granted, and Cannady submitted a pro se brief. Having reviewed the record, however, we cannot find any arguable issue for appeal or reversible error committed at the

5

trial level.  As to Cannady's ineffective-assistance-of-counsel claim, we dismiss this claim without prejudice to his ability to raise it in postconviction proceedings, if he chooses to do so.  Thus, we affirm Cannady's conviction and sentence.

¶11.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**