# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00129-COA

**DAVID PERKINS A/K/A DAVID LEON PERKINS**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2019 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/30/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. A Rankin County jury convicted David Perkins of sexual battery against his stepdaughter. The trial court sentenced him to forty years as a non-violent habitual offender[1] in the custody of the Mississippi Department of Corrections, with twenty years suspended and twenty years to serve, followed by five years of post-release supervision. On appeal,

---

[1] Perkins has an extensive criminal history—the presentence investigation report showed he had been convicted of nine prior felonies including grand larceny, burglary of a dwelling, and burglaries of businesses.

Perkins's counsel filed a *Lindsey*[2] brief stating there were no arguable issues. After reviewing the record, we agree and affirm Perkins's conviction and sentence.

## STATEMENT OF FACTS

¶2. On the weekend of March 11, 2018, Vicki[3] went to her court-ordered visitation with her mother, Tonya, and stepfather, David Perkins, at their trailer home in Rankin County, Mississippi. At the time, Vicki was thirteen years old, and her stepfather was fifty-six. Tonya and Jeff, Vicki's father, divorced when Vicki was just three. Tonya then married Perkins, and Jeff remarried as well. Jeff has full custody of Vicki, and Tonya has visitation every other weekend.

¶3. That Sunday, Perkins, Tonya, and Vicki went to church and then out to eat. Afterward, they took an afternoon nap together, retiring to the same bed because the trailer had only one functional bedroom. Vicki lay between her mother and stepfather, as was customary. Vicki testified that Perkins lay "straight," or flat, on his back and to her left. Tonya was lying to Vicki's right on her side with her back to Vicki.

¶4. Tonya had taken two muscle relaxers for back pain and had dozed off. Vicki was playing on her phone but decided to go to sleep as well. Vicki testified that Perkins was awake. Placing her phone on her mother's pillow, Vicki fell asleep on her stomach close to Perkins.

---

[2] In *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005), the Mississippi Supreme Court outlined the procedure when appellate counsel determines there is no arguable issue in the record for appeal.

[3] We have changed the victim's and her relatives' names to protect her identity.

¶5. Vicki awoke, shocked to feel Perkins's fingers in her "private area." Vicki testified that his hand was down the top of her blue-jean skirt, "where the waist is," and his fingers were underneath her panties, "rubbing" and "moving." Upset, Vicki immediately got up, grabbed her phone, and ran to the living room where she called her father to come get her early, without explanation.

¶6. As Vicki waited, her father called her mother, wanting to know why Vicki wanted to be picked up early. Tonya then went to Vicki and asked her what was going on. Vicki reluctantly told her mother that "David stuck his fingers inside my pee pee" but begged her not to tell her father. Tonya said she would not tell Jeff.

¶7. Jeff testified he received a call from Vicki at around 4:00 p.m., and she was very upset. He asked if she was okay, and she said, "[J]ust come get me." Worried, Jeff and his wife drove to the Perkinses' trailer. Tonya and Vicki were standing on the porch, but Tonya would not talk or look at Jeff. He asked Vicki repeatedly what was wrong, but Vicki said she "couldn't talk." On the way home, Vicki relented and told her father that Perkins had touched her. Jeff asked if it was an accident, and Vicki told him, "Daddy, he took his hand and stuck it up my skirt." Vicki told Jeff that she had told her mother. Angry, Jeff turned around and drove back to the Perkinses' trailer.

¶8. After Jeff knocked several times, Tonya came to the door. She denied knowing about the incident and refused to let Jeff talk to Perkins. Jeff then told Tonya, "[T]his is what I'm going to do. I'm going to go file charges on [Perkins], and I am going to take [Vicki] to the hospital and get her checked out." About this time, Jeff received a telephone call from

3

Henry—Vicki's grandfather, Tonya's father, and the pastor of Tonya's church. Henry and his wife lived across the street from the Perkinses. Henry begged Jeff not to press charges because it would "ruin [Perkins's] reputation." Jeff hung up on Henry and proceeded to the Rankin County Sheriff's Office with his wife and Vicki. Jeff filed charges against Perkins, and Vicki talked to investigators and gave a statement about the incident. Then they went to the emergency room at Batson Children's Hospital.

¶9. At the hospital, a sexual assault examination was performed on Vicki by two physicians and a SANE nurse (sexual assault nurse examiner). The nurse noted in the medical records (which were later admitted into evidence) that Vicki stated Perkins rubbed her private (vulva) area with his hand.[4] Dr. Susan McKey, the primary treating physician, took Vicki's history and performed a full physical examination. Then the SANE nurse performed a visual inspection of Vicki's entire body, as well as a full genitalia exam, looking for any tears, lacerations, or abnormal discharge. There were no abnormal findings, but Dr. McKey testified that this fact did not rule out a sexual assault. Throughout the entire process, Vicki never stopped the examination or denied the assault happened.

¶10. Juvenile Investigator Sheila Tucker of the Rankin County Sheriff's Office set up a forensic interview for Vicki at the Children's Advocacy Center (Center) a few days after the incident. The Center is a private nonprofit organization that conducts interviews regarding allegations of physical or sexual abuse in a non-leading, non-suggestive manner within a child-friendly setting. During the interview, Vicki disclosed that Perkins had put his fingers

_____

[4] Vicki denied "penetration" to the SANE nurse, but it was unclear if she knew that "penetration" did not have to be with Perkins's penis.

4

in her private area, which was consistent with the initial report Jeff gave to law enforcement. As a result, Tucker contacted Perkins and Tonya to come in and be questioned. Tonya stated Vicki was upset on the day of the incident. Perkins told Tucker the weekend of March 11 had been "wonderful" and denied the assault. Perkins confirmed that he, Tonya, and Vicki all slept in the same bed when Vicki came to visit. Perkins told Tucker he thought Vicki's father was the instigator of the story about the incident, not Vicki.

¶11. Charlene Barnett conducted Vicki's forensic interview at the Center three days after the incident. Barnett testified that during the interview, Vicki stated Perkins touched her genital area, and afterward she had told both her mother and father. The interview was recorded and later would be played for the jury. Vicki's demeanor could be seen as innocent, childlike, and shy. Throughout the interview, Vicki was very uncomfortable, nervously tapping her feet, hugging herself, and sometimes nervously giggling. When asked for details about the incident, she hesitated and embarrassingly stated that she "did not know how to say it." Barnett offered her some paper and a marker to write what she had trouble saying. Barnett said Vicki wrote that she "woke up and his fingers were touching my privates." Vicki described their sleeping positions in detail, as well as the events after the assault. Vicki later would give the exact same details at trial. Vicki confirmed that Perkins touched her under her skirt and panties and inside her private area, and she confirmed that his fingers were "moving." Vicki claimed that Perkins had never touched her that way before.

¶12. Vicki testified at trial that she had had a good relationship with her stepfather before

5

the sexual assault, although at times she would get mad at him. One such time had occurred a few weeks earlier, when Vicki had gotten upset over an admittedly petty incident involving her birthday cake. Vicki had disrespected her mother, and Perkins cursed and yelled at her about her behavior. However, in Vicki's statement to the SANE nurse, she stated that the day before the assault, she had hugged Perkins to show she had forgiven him for the prior cake incident. At trial, Vicki started crying when describing the assault and when asked how it made her feel being examined by medical professionals at the hospital. Vicki testified that it had been a good weekend visit prior to Sunday's incident. Vicki also remained steadfast during cross-examination that Perkins had touched her private area.

¶13. Perkins's defense at trial was that due to the birthday-cake incident, Vicki had falsely accused him of sexual assault. Jeff, however, testified that the matter had been resolved with the help of Vicki's grandparents. Tonya's father Henry also testified about the ongoing rift among Perkins, Tonya, and Jeff. However, Jeff testified that his and Perkins's relationship was "good." Tonya's father also confirmed that he had told Jeff "not to go to the police" until he found "out what was going on."

¶14. Tonya testified for the defense. She confirmed the sleeping arrangements of the three but stated that Perkins does not sleep on his back because of nerve injuries—he sleeps on his side with his hands between his legs. She testified that over the March 11 weekend, everyone was getting along very well. During the nap, Tonya claimed that Perkins fell asleep first, and she was asleep until Jeff called her. Tonya confirmed that Vicki, who was upset, told her mother that when she woke up, Perkins's finger was in her private area.

6

Tonya told Vicki that "this is a mother's worst nightmare" but testified she had no intention of going to the police. Tonya testified that since her divorce from Jeff, Vicki was "spoiled" and "throws a fit" when she does not get her way, such as during the cake incident. Tonya further described her relationship with Jeff as volatile.

¶15. Jerry Nash, a nurse practitioner, testified for the defense and said that he had treated Perkins, a welder, for tingling and weakness of the hands with a neuropathy-type medication (Gabapentin) to relieve his pain. Later, Perkins told Nash the medicine was working, and he was not having any side effects.

¶16. Perkins chose not to testify in his own defense. The jury instructions included one instruction providing the elements of sexual battery and one instruction stating that slight penetration was sufficient to constitute sexual battery.

## ANALYSIS

¶17. On appeal, the Indigent Appeals Division of the Office of State Public Defender was appointed to represent Perkins, and his counsel filed a "*Lindsey* brief," contending there are no arguable issues in the record for appeal. In *Lindsey*, the Mississippi Supreme Court held that appellate counsel must thoroughly review the record and specifically examine the following:

> (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Lindsey*, 939 So. 2d at 748 (¶18). If appellate counsel finds no arguable issues in the record,

he must then advise the defendant of his right to file a pro se brief. *Id.*

¶18. In his *Lindsey* brief, appellate counsel certified that he thoroughly reviewed the record and found no arguable issues to appeal. Perkins subsequently filed a one-page supplemental brief claiming he did not commit the crime. Perkins did not raise any legal issues; instead, he stated his version of events on that Sunday. Perkins noted that he had carpel tunnel syndrome and had taken medication to sleep. When he awoke, Vicki was getting ready to leave early. After Jeff picked up Vicki, Tonya came back inside and told Perkins he "had been accused of touching [Vicki]." This information, however, is not in the record, as Perkins did not testify. He cannot, under the guise of argument, testify before this Court.

¶19. After an independent and thorough review of the record, no issues warrant reversal. Thus, we affirm Perkins's conviction and sentence.

¶20. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**