# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-01280-SCT

*TIMOTHY MARBLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2022 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | WILBERT LEVON JOHNSON |
| | BRENDA FAY MITCHELL |
| | STEPHANIE ALEXIS BROWN |
| | ROSHARWIN LEMOYNE WILLIAMS |
| | TERRY WALLACE |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Timothy Marbley was convicted of aggravated domestic violence pursuant to

Mississippi Code Section 97-3-7(4)(a)(ii) (Rev. 2020)[1] in the Circuit Court of Tunica County.

---

[1]Marbley's indictment improperly cited Mississippi Code Section 97-3-4(a)(iii) (Rev. 2020). This issue was raised at trial, and the trial judge determined that "the code section is not a necessary portion of the statement, and that the body of the indictment does give Mr.

He was sentenced to a term of ten years, five years of which were suspended with non-reporting, supervised probation.

¶2. On appeal, Marbley's counsel filed a brief pursuant to ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005), asserting that, after conducting a thorough and diligent search of the record, there are no arguable issues for review. Despite being given an opportunity to do so, Marbley did not file a *pro se* brief. Having reviewed the entire record, this Court finds that there are no issues that warrant appellate review. Thus, we affirm Marbley's conviction and sentence.

### STATEMENT OF FACTS

¶3. In April 2020, the Tunica County Sheriff's Department dispatched officers to a disturbance at the River Pointe Apartments, which are located in Robinsonville, Mississippi. Lieutenant DeAndre Walton was one of the first officers to arrive at the apartment complex. Walton testified that, upon arriving, he "made contact with [an African American] female . . . by the name of Sherita Lynch." He went on to say that she was standing in front of an apartment building and that he "observed that she had cuts" and that "her right foot was in a puddle of blood." He testified that he could smell the odor of alcohol coming from Sherita Lynch. She was transported by ambulance to a hospital.

¶4. After Sherita Lynch had departed, the officers began investigating the scene. The officers were searching for Timothy Marbley, a man who lived at the apartment with Lynch.

---

Marbley sufficient [n]otice of the charges against him[.]"

Lieutenant Walton testified that Marbley's vehicle was found at the apartment complex, but Marbley himself was not. Walton went to Lynch's apartment and observed[2] a gin bottle, some portions of fish on the floor, and a chair that had been turned over. Lieutenant Investigator Elliot Soto observed and photographed the apartment from the open doorway. He also photographed the "blood trail" left by Sherita Lynch, which started at the apartment and went to the parking lot where she had been found by police. He testified that he noticed that "some kind of disturbance" had occurred in the apartment "because you see everything out of place." He testified also that he saw a machete on a piece of furniture in the apartment.

¶5.     Five days after the attack, the police arrested Marbley and took him into custody. At that time, Marbley agreed to give a voluntary statement to Lieutenant Soto. In that statement, Marbley claimed that after he returned home from dropping off a guest who had been at Lynch and Marbley's apartment, Lynch was upset, and the two got into a verbal argument. The argument turned physical. Marbley informed Soto that, during the physical altercation, Lynch had taken a pan containing grease, which she had been using to fry fish, and threw it at him, causing second-degree burns on his left arm. Marbley claimed that, in response, he grabbed a machete. According to Soto, Marbley said that he had tried to use the machete to scare Lynch because he thought the machete had a cover on its blade. Lieutenant Soto

_____

[2]The officers did not have consent to search the apartment at that time. Both Timothy Marbley and Sherita Lynch lived at the apartment. The officers failed to get Lynch's permission or signature on a consent-to-search document before she was transported to the hospital. Thus, all testimony regarding the contents of the apartment is from the officers' observations from the frame of the opened front door.

testified that Marbley told him that once "he realized that what he had done, he left the apartment and he went to one of the friend's house, nearby."

¶6.     On February 4, 2021, Marbley was indicted for aggravated domestic violence.[3] A trial was held on October 3, 2022. Photographs of the blood trail from the apartment to the parking lot, of Lynch's injuries, and of the couple's apartment were admitted into evidence. In addition to the testimony from the law enforcement officers, both Lynch and Marbley testified at trial.

¶7.     Sherita Lynch testified that at that time of the incident, she had been dating Marbley for two years and that they were living together at the apartment.[4] She testified that earlier in the day of the incident, Marbley had two friends at the apartment, and they drank alcohol

---

[3]The language of the indictment, in relevant part, is as follows:

. . . on or about April 15, 2020, in the County and State aforesaid and within the jurisdiction of this Court, [Timothy Marbley] did unlawfully, purposely, knowingly and feloniously cause bodily injury to Sherita Lynch with a deadly weapon, to-wit: a knife, by cutting her finger, right foot, and left leg, when the said Timothy Marbley and Sherita Lynch had a current or former dating relationship, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.

[4]On cross-examination, Lynch was asked questions regarding whether she had married Marbley, to which she replied that she could not recall the date but that the ceremony was held "[a]t the county judge, in Coahoma." Then she was asked "[y]ou never represented to this jury, during direct examination, that you were married to Mr. Marbley, did you?" To which Lynch responded, "No, I didn't. That question was never asked of me." Whether the two were spouses or were in a dating relationship is irrelevant because the statute accounts for both types of relationships. *See* Miss. Code Ann. § 97-3-7(4)(a) (Rev. 2020).

and played cards. Initially, Lynch denied having consumed any alcoholic beverages that day. But on cross-examination, she admitted that she had consumed one or two beers that day. However, she maintained that she was not intoxicated. Lynch said she left the living room, where the others were, and went into the bedroom. Lynch stated that when she came out of the bedroom, Marbley and his friends were gone. According to Lynch, when Marbley returned to the apartment, she went into the kitchen to cook some fish sticks for him. While waiting for the grease to heat up, Lynch went back to the living room and sat down on the couch. She testified that the situation went "AWOL from there" as Marbley "went off," grabbing a machete and swinging it at Lynch. She stated that she tried to protect herself by putting her hands up and kicking him. She stated also that she was able to escape the attack by kicking Marbley in the groin and running to the kitchen. According to Lynch, while in the kitchen, Marbley came at her with the machete again, and, in response, she threw hot grease in his face. After throwing the pan of hot grease, she ran out of the front door and asked her neighbor for help. At trial, she identified Marbley as her attacker.

¶8.     Marbley's testimony provided a different version of the events that had transpired that night. Marbley testified that after he had dropped off his friend and returned home, he found Lynch standing in the kitchen doorway and as he walked past her, she grabbed his shirt. He testified also that she was saying, "I'm tired of you disrespecting me" while she was holding onto his shirt and had either a skillet or a pot of grease in her hand. In response, Marbley

5

admitted picking up a knife of some type[5] but denied that it was a machete. He stated that the knife was in a holster. Then, Lynch "came forward and poured the grease across my shoulder and hit me with the—I'm not for sure if it was a skillet, or a pot."[6] He stated that he then pushed Lynch, who was still holding onto him, onto the couch and began hitting her. He testified that he "didn't know that the thing came out of the holster" and that he "didn't mean to hurt her." Marbley stated that "[w]hen [he] got aloose from her, she was yelling . . . . We was arguing. . . . I didn't know the extent of her injuries. . . . When she went out the apartment, you know, I'm figuring, like, this ain't the first time we done went through this. That's why I left." According to Marbley, Lynch was upset at him because "[a]ny time she got under the influence of alcohol," she would get suspicious or jealous of Marbley cheating or being with other women.

¶9. The jury found Marbley guilty of "aggravated assault domestic violence."[7] Marbley did not file any post-trial motions. The trial court sentenced Marbley to a term of ten years in the custody of the Mississippi Department of Corrections, five years of which were suspended with non-reporting, supervised probation.

---

[5]He testified that he thought the knife was either a paring knife or a hunting knife.

[6]According to Marbley, when he initially turned himself in, the police saw his burns and took pictures of them. He testified also that he had pictures of his injuries on his cell phone, and he stated that he had informed his attorney of this information. No pictures were produced to corroborate Marbley's testimony regarding his injuries.

[7]A person found guilty of Mississippi Code Section 97-3-7(4)(a)(ii) is convicted of aggravated domestic violence. The addition of the word *assault* is improper; "aggravated assault domestic violence" is a misnomer.

**DISCUSSION**

¶10.    This Court in *Lindsey* set forth the procedures an attorney must follow when he or she believes that there are no appealable issues. The procedures an attorney must follow in such a situation are:

> (1) . . . [F]ile and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)];
>
> (2) . . . [C]ertify [in the brief] that there are no arguable issues supporting the client's appeal, and [that the attorney] has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding the arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing[; and]
>
> (3) . . . [S]end a copy of the brief to the defendant, inform the [defendant] that counsel could find no arguable issues in the record, and advise the [defendant] of his or her right to file a pro se brief.

*Woodson v. State*, 292 So. 3d 221, 223 (Miss. 2020) (some alterations in original) (quoting *Lindsey*, 939 So. 2d at 748).

¶11.    Marbley's counsel represents that he has complied with the above mandates of *Lindsey*, stating that he has scoured the record and has considered and reviewed the following:

> (a) the reason for the arrest and the circumstances surrounding the arrest of Marbley; (b) any possible violations of Marbley's right to counsel; (c) the entire trial transcript and content of the record; (d) all rulings of the trial court; specifically, the rulings on various defense counsel objections, including, but not limited to, objections made by defense counsel that were properly sustained; (e) possible prosecutorial misconduct; (f) all jury instructions,

7

including, but not limited to, those requested by defense counsel and denied by the trial court; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing, including but not limited to the constitutionality of Marbley's sentence; (i) the indictment and all of the pleadings in the record; (j) any possible ineffective assistance of counsel issues; (k) any potential discovery violations; (l) any potential speedy trial violations.

*See Lindsey*, 939 So. 2d at 748. Counsel states that he mailed Marbley "a copy of this brief, a copy of the trial transcript, and correspondence informing Marbley that counsel finds no arguable issues in the record and that [he] has a right to file a pro se brief." In addition, Marbley's counsel asked this Court to grant Marbley a forty-day extension in order to allow Marbley to file a *pro se* brief, if he chose to do so, which we granted. *See* Order, **Marbley v. State**, No. 2022-KA-01280-SCT (Miss. July 14, 2023). Marbley did not file a *pro se* brief.

¶12. This Court finds that Marbley's counsel has complied with the procedural requirements of **Lindsey**. Also, this Court has scoured the record and thoroughly reviewed the transcript, and we do not find any arguable issues. Therefore, this Court affirms Marbley's conviction and sentence.

## CONCLUSION

¶13. This Court finds that the procedural requirements of **Lindsey** were satisfied and that there are no viable issues in this case. We affirm Marbley's conviction and sentence.

¶14. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

8