# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01127-COA

**MARLON JOHNSON A/K/A MARVIN**                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:              10/18/2022
TRIAL JUDGE:                   HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:     COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:             BRENDA FAY MITCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 05/07/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.    On May 17, 2022, a Coahoma County Circuit Court jury found Marlon Johnson guilty of sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2020). The circuit court sentenced Johnson to serve twenty years in the custody of the Mississippi Department of Corrections. After the court denied his motion for judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial, Johnson appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.    According to the victim, K.H., on the evening of November 29, 2014, she and her

friend K.J. went out to eat.[1] At the time of the incident, K.H. and K.J. were thirteen and fourteen years old, respectively. After they finished eating, the girls were supposed to call their parents for a ride to the bowling alley. They never called either of their parents because Johnson, Deontae Strong, and Demetris Thompson arrived and offered them a ride to the bowling alley, and the girls accepted. One of the young men told the girls that they "had to go home and get something." According to K.H.'s testimony, when they arrived at a trailer park in Oakhurst, the men asked them to get out, and the girls went into the trailer. K.H. testified that she and K.J. sat on the sofa when they first entered the trailer. K.H. observed Johnson's high school diploma, and that is how she knew Johnson "stayed there." At some point, K.J. and Thompson went into a room in the back of the trailer.

¶3.     K.H. went into a bedroom with Strong and Johnson. K.H. testified that Strong turned off the lights and closed the door. According to K.H., Strong restrained her while Johnson pulled off her pants. She struggled with them at first, but Strong hit her, her nose ring came out, and her nose started bleeding. She stopped fighting as a result. Strong sexually assaulted her first and walked out of the room. Then Johnson also sexually assaulted her by putting his penis into her vagina.

¶4.     K.H. explained that after the assault, she found her clothes, left the room, and found K.J. in the hallway. The two girls then went outside. K.H. was about to tell K.J. what happened when K.J. told her, "[H]old on, because he's about to come out here," talking about Thompson. Eventually Strong, Johnson, and Thompson all came out of the trailer. The three

---

[1] We use initials to protect the minors' privacy.

men and the two girls got into the vehicle and drove away from the trailer. As they drove, K.H. testified that she was telling K.J., "[W]e've got to get out of here. Something 'fin to happen." K.H.'s testimony shows the girls were frightened at this point and wanted to exit the vehicle. Eventually, the driver stopped the vehicle, and the girls got out and "took off running" in different directions. When K.H. looked back and did not see K.J., she went back to get her. At that point, the girls encountered Officer Eddie Earl, a patrol officer with the Clarksdale Police Department.

¶5.    Earl was patrolling the Oakhurst area when he spotted the girls and attempted to make contact with them. The girls initially ran from Earl, but he was able to make contact and get them to identify themselves. According to Earl's testimony, it was past curfew, and he could tell the girls were juveniles based on their appearance. Earl testified that he told both girls to get into his patrol car, and he took them to the police department, where their parents were called. K.H. and K.J. were later released to their mothers.

¶6.    K.H.'s sister testified that after her mother and K.H. arrived home, she could tell something was wrong, and she took K.H. to the bathroom in the back of the house and asked K.H. to tell her what was wrong. After K.H. explained to her what had happened, they went to their mother and father, who, according to K.H.'s sister, "handled the situation after that." They took K.H. to the Northwest Regional Medical Center and the police station that night.

¶7.    At the hospital, K.H. was seen by sexual-assault nurse examiner, Jacqueline Williams, and K.H. indicated to her that she had been sexually assaulted. Williams performed a physical examination of K.H. and prepared a sexual assault kit.

¶8. Detective Jamie Stribling, an investigator for the Clarksdale Police Department, was called to the hospital to investigate the reported sexual assault. After arriving at the hospital, he spoke with K.H.'s mother but did not speak with K.H. because she was a juvenile. According to protocol, Stribling arranged for a trained forensic interviewer to speak with K.H. Stribling later went back to the hospital to retrieve the sexual assault kit, which was then taken to the Mississippi Crime Laboratory in Batesville. Stribling also obtained DNA samples from Strong and Johnson to compare with any DNA found in the rape kit.

¶9. Steven Little, who was qualified as an expert in the field of forensic serology, analyzed the rape kit at the crime lab. Little testified that his role was to identify any DNA samples on the items collected in the rape kit and preserve them for DNA testing. Alexandria Bradley was qualified as an expert in the field of forensic DNA analysis for the State. She tested DNA swabs from both Strong and Johnson. Bradley testified that the DNA she tested from the rape-kit items was a match to Johnson. Strong was excluded as a contributor to the samples tested.

¶10. After K.H.'s testimony, the State rested its case. Johnson moved for a directed verdict, which the court denied. Johnson elected not to testify, and the defense rested without calling any witnesses. The jury was instructed and retired to deliberate, ultimately finding Johnson guilty of sexual battery. After the court denied Johnson's post-trial motion, he appealed.

**ANALYSIS**

¶11. Johnson's counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743

(Miss. 2005),[2] representing to this Court that "counsel diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Marlon Johnson's behalf in good faith for appellate review, and upon conclusion, have found none." Counsel requested Johnson be granted an additional forty days within which to file a pro se brief. By our order dated October 4, 2023, this Court granted Johnson an additional forty days to file a pro se supplemental brief; however, no supplemental brief was filed.

¶12. We have conducted an independent and thorough review of the record in this case. We find there is legally sufficient evidence to support Johnson's conviction. Further, we find no issues that warrant reversal of Johnson's conviction or sentence. *See Jackson v. State*, 335 So. 3d 620, 623 (¶11) (Miss. Ct. App. 2022).

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

---

[2] In *Powe v. State*, 366 So. 3d 944, 945 (¶8) (Miss. Ct. App. 2023), we explained:

*Lindsey* establishes the "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18).