# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00448-COA

**RANDAL BERNARD PRINCE A/K/A RANDAL B. PRINCE A/K/A RANDAL PRINCE**                   APPELLANT

v.

**STATE OF MISSISSIPPI**                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2025 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On March 18, 2025, a Neshoba County Circuit Court jury found Randal Prince guilty of unlawful sexual activity between a correction officer and prisoner pursuant to Mississippi Code Annotated section 97-3-104(1) (Rev. 2020).  Prince was sentenced to serve five years in the custody of the Mississippi Department of Corrections (MDOC).  The court further ordered Prince to register as a sex offender immediately upon his release from MDOC custody.  After the denial of his motion for a new trial, Prince appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     In June 2023, Prince was employed at the Neshoba County Jail as a correctional

officer. In that same month, Neshoba County Jail Administrator Brad Stewart received a report of an odd interaction between Prince and Naudia Durham, an inmate at the correctional facility. As a result of the reported incident, Stewart began an investigation. Stewart reviewed video surveillance footage from the common area inside block A and from the hallway leading towards the entrance to block A from June 8, 2023, where and when the incident reportedly occurred. Block A housed female inmates, including Durham. In the surveillance footage, Stewart observed Prince approach the entrance to block A, where Durham met him at the door. After a short conversation between Prince and Durham at the door, the surveillance footage from the common area of block A showed Durham walk back into her private cell briefly and come back out wrapped in a blanket. Durham exited block A and joined Prince in the hallway outside. In the hallway surveillance footage, Durham was seen turning her back to the camera as she extended her arms so that the blanket obstructed the view of any further physical interaction between her and Prince. The hallway surveillance footage showed Prince bending down in front of Durham; however, no other specific movements could be seen. At trial, Stewart testified that he interviewed Durham as well as several other female inmates in the course of his investigation of the encounter.

¶3. Durham testified at trial that another female inmate had made an arrangement with Prince to bring Durham cigarettes and that the surveillance footage in question showed Prince delivering the cigarettes. According to Durham, as payment for the cigarettes, Durham allowed Prince to put his fingers in her vagina. Durham claimed that when she held up the blanket in the hallway, Prince put his fingers in her vagina and then placed two packs

2

of cigarettes in the waistband of her pants.

¶4. Josh Burt was an investigator with the sheriff's department on June 16, 2023. At trial, Burt testified that on that date, he spoke with Prince in furtherance of Stewart's investigation. According to Burt, after initially denying any wrongdoing, with the exception of bringing Durham cigarettes, Prince "made the statement that he did in fact stick his finger inside of Naudia Durham." However, at trial, Prince denied that he had any sexual interaction with Durham. Prince stated that he only gave a statement that he had participated in the alleged behavior because he was "scared to death." Prince testified that he did bring Durham cigarettes and that he did place them in the waistband of her pants.

¶5. After the trial commenced and deliberations concluded, the jury returned a verdict of guilty. Prince was sentenced to serve a total of five years in the custody of MDOC and ordered to register as a sex offender immediately upon his release. Prince filed a motion for a new trial, which the trial court denied. Prince appealed.

**ANALYSIS**

¶6. Prince's counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005),[1] representing to this Court that "counsel diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Prince's behalf in good faith for appellate

---

[1] In *Powe v. State*, 366 So. 3d 944, 945 (¶8) (Miss. Ct. App. 2023), we explained:

*Lindsey* establishes the "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18).

review, and upon conclusion, have found none." Counsel requested that Prince be granted an additional forty days within which to file a pro se supplemental brief. By our order dated August 12, 2025, this Court granted Prince an additional forty days to file a supplemental brief; however, no brief was filed.

¶7. We have conducted an independent and thorough review of the record in this case. There is legally sufficient evidence to support Prince's conviction, and we find no issues that warrant reversal of Prince's conviction or sentence. *See Jackson v. State*, 335 So. 3d 620, 623 (¶11) (Miss. Ct. App. 2022).

¶8. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**