# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00480-COA

**MARTAVIS MOORE**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                     **APPELLEE**

DATE OF JUDGMENT:              03/29/2022
TRIAL JUDGE:                       HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:    BOLIVAR COUNTY CIRCUIT COURT,
                                  SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                                  BY: JUSTIN T. COOK
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                  BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:             BRENDA FAY MITCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 06/20/2023
MOTION FOR REHEARING FILED:

## BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1.    Martavis Moore was convicted of one count of aggravated assault with a firearm

enhancement.  He was sentenced to ten years for aggravated assault (with three years

suspended, seven years to serve, and three years of post-release supervision) and five years

to serve for a firearm enhancement.  The concurrent terms were to be served in the custody

of the Mississippi Department of Corrections.  Finding no arguable issues on appeal,

Moore's appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss.

2005).  Moore was granted time to file a supplemental brief pro se, but he elected not to do

so. No issues were raised on appeal, and this Court's thorough and independent review of the record has revealed no arguable issue that would warrant supplemental briefing or reversal. Therefore, we affirm the circuit court's judgment of conviction and sentencing.

## FACTS AND PROCEDURAL HISTORY

¶2. Shortly after midnight on August 26, 2020, Eddie Lynom called the Shelby Police Department to report a disturbance at his apartment. Officer Kevin Coleman responded to the call. Once he arrived, Officer Coleman saw Martavis Moore and Xavier Gray walking out from behind the apartment complex. Officer Coleman testified that Moore recognized him and called out to let Officer Coleman know that he was leaving the premises. Moore told Officer Coleman that he had attempted to buy cigarettes from Lynom but would not be coming back.

¶3. Approximately thirty minutes later, Lynom called the Shelby Police Department again to report that he had been shot in his stomach. Officer Coleman again responded to the scene, where Lynom told the officer he had been shot through his bedroom window. Lynom identified Moore and Gray by their first names and referenced Moore as "Julia Moore's son." He identified Moore as the shooter, stating that he was "positive" that he saw Moore's face. Lynom was taken to the hospital, where he remained for a month.

¶4. Lagarius Washington met Moore and Gray as he was walking home on the night of the shooting. Washington is Moore's cousin. Washington said that he, Moore, and Gray chatted about where to buy cigarettes. He told them to go buy some from Lynom. Washington testified that after briefly walking together he parted ways with the two men.

2

He witnessed Moore and Gray walk toward Lynom's apartment. Washington testified that when he was approximately 300 feet away, he "looked back" after hearing a gunshot and saw Moore and Gray at Lynom's window. Washington testified that Gray shot Lynom but was confronted on the stand with his report to the police department, which was taken shortly after the incident. In the report, he had told police that Moore shot Lynom. After the shooting, Moore texted Washington and told him where he had buried the gun. Washington passed this information on to the police.

¶5.     Additional witnesses placed Gray and Moore at or near the scene of the crime. One witness, Dennis McNutt, testified that he was on his way to Lynom's apartment that night when he heard a gunshot. He was approximately one street over from Lynom's residence when he heard the gunshot. Officer Coleman, who was near McNutt, confirmed that both he and McNutt had heard a gunshot. After Officer Coleman pulled away in his vehicle, McNutt saw "two guys coming down the street, running" from the direction of Lynom's apartment. McNutt identified those two people as Gray and Moore. McNutt continued to Lynom's apartment where he arrived after Officer Coleman.

¶6.     Officer Ricardo Tell, who interviewed Washington after the shooting, testified that the residences of both Moore's mother and Gray's mother were searched. Officer Tell began to testify how the gun was recovered, but the defense objected because "[Officer Tell] sa[id] he searched [Gray's] back yard, without a warrant. And I object to anything further about what he found from the search." Outside of the jury's presence, the judge listened to Officer Tell's testimony that he received permission to search the property from Gray's mother after

3

he advised her of what he was looking for. Officer Tell testified a gun was found on the premises of Gray's mother's house. The gun was outside, buried in the ground. The Court overruled the objection and found that Gray's mother had consented to the search. The gun was linked to a cartridge casing recovered from the crime scene at Lynom's home. An expert witness opined that the cartridge was fired from the recovered gun "based on the agreement of those individual characteristics," which the expert observed under her microscope.

¶7. Moore and Gray were arrested and jointly indicted for one count of aggravated assault with a firearm enhancement under Mississippi Code Annotated sections 97-3-7(2)(a)(ii) (Rev. 2020) and 97-37-37(1) (Rev. 2020). On December 6, 2021, the pair received a joint trial. A jury found Moore guilty of aggravated assault with a firearm enhancement. Gray was acquitted of the charge. For the offense of aggravated assault, Moore received a sentence of ten years in custody, with three years suspended and seven years to serve, and three years of post-release supervision. Moore was ordered to serve a concurrent term of five years in custody for the firearm enhancement.

¶8. On December 17, 2021, Moore filed a motion for judgment notwithstanding the verdict (JNOV), or a new trial. An amended motion was filed on April 4, 2022. In the amended motion Moore alleged that (1) the jury's verdict was contrary to the law and (2) contrary to the weight of the evidence; (3) the State failed to prove a prima facie case as charged in the indictment; and (4) the jury received evidence that was illegally obtained as a result of a warrantless search of Gray's residence and yard and that testimony regarding the consent was not disclosed to the defense prior to the trial. On April 13, 2022, the trial court

entered an order denying the amended motion. Moore appealed.

## DISCUSSION

¶9.     In *Lindsey*, the Mississippi Supreme Court adopted a framework "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18).  First, "[c]ounsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)]." *Id*.  In the brief,

> counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id*.

¶10.    Counsel is then required to forward a copy of the brief to the client, informing the client that the record contains no arguable issues, and advising the client that he has a right to file a pro se brief. *Id.*  Next, this Court will "determine, based on [our] review of the record and any pro se brief filed, if there is any arguable issue." *Johnson v. State*, 307 So. 3d 500, 502 (¶7) (Miss. Ct. App. 2020).  In the event this Court finds any arguable issue, we "will require appellate counsel to submit supplemental briefing on that issue 'regardless of the probability of the defendant's success on appeal.'" *Id*.  (quoting *Lindsey*, 939 So. 2d at 748 (¶18)).  Finally, "[o]nce briefing is complete, [we will] . . . consider the case on the merits and render a decision." *Id*. (quoting *Lindsey*, 939 So. 2d at 748 (¶18)).

5

¶11. In this instance, Moore's appellate counsel filed a brief in compliance with *Lindsey,* stating that Moore's case presents no arguable issues for appeal. After being informed that he could file a supplemental brief pro se, Moore failed to submit a brief to the Court. Upon review of the record, we have identified no arguable issue that would warrant supplemental briefing or reversal. Accordingly, we affirm the circuit court's judgment.

¶12. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**