# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00264-COA

**JASON ALLEN A/K/A "LITTLE JASON ALLEN"**         **APPELLANT**
**A/K/A "J" A/K/A JASON ALLEN, JR.**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/24/2023 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/20/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., SMITH AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. On February 2, 2023, a Coahoma County Circuit Court jury found Jason Allen guilty of Count I: armed robbery, Count II: kidnapping, and Count III: aggravated assault with a firearm enhancement. Allen was sentenced to serve five years in the custody of the Mississippi Department of Corrections (MDOC) for Count I, five years in the custody of the MDOC for Court II, and twenty years in the custody of the MDOC for Count III. Allen was sentenced to an additional five years in the custody of the MDOC for the firearm enhancement in Count III. All of Allen's sentences were ordered to run concurrently for a total of twenty years in the MDOC's custody. After the denial of his "Motion for New Trial

Pursuant to Mississippi Rules of Criminal Procedure 25.1," Allen appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     During the late hours of May 13, 2020, and into the early morning hours of May 14, 2020, Markevius Dear was shot multiple times, robbed, and kidnapped before he was finally taken to the hospital in Clarksdale, Mississippi.  After an initial treatment for his injuries at the Clarksdale hospital, Dear was airlifted to the Regional Medical Center at Memphis (The MED).  It is undisputed that Allen drove Dear to the local hospital in Allen's car; however, Allen's and Dear's testimonies at trial regarding the events leading up to their arrival at the hospital were drastically different.  The State called multiple witnesses in their case-in-chief including Dear, Dear's father, law enforcement officials, and forensic experts.  In response, the defense called Allen as its one and only witness.

¶3.     Dear testified that he and Allen were close childhood friends.  According to Dear, on the evening of May 13, 2020, he drove to Crumpton Field to meet Allen to buy some marijuana to celebrate his 21st birthday.  Crumpton Field was approximately two minutes from Dear's father's house, where Dear lived part-time.  Dear stated that when he arrived, Allen was already there with Terrance Thomas and Tyrekius Allen (Tyrekius).  According to Dear, Allen's black Sentra was parked under some trees close to the gate.  Dear testified that he parked close to the street behind an 18-wheeler.  As Dear exited his car and approached Allen, he saw gun "flashes" from both sides of Allen's car.  He stated that there were two men on one side and one man on the other.  Dear testified that he was shot seven times and sustained injuries to his left thigh, right thigh, right calf muscle, left hip, right "butt

cheek," and lower abdomen. As Dear fell to the ground, Allen approached him with an assault weapon in hand. According to Dear, the men took his car keys and moved his truck to another location. When the men came back, they forced Dear to get into Allen's car by dragging him at gunpoint. Dear testified that Allen had to help him get into the car because he was unable to stand up due to his injuries. After Allen helped Dear into the car, he drove Dear and the other two men to Allen's house on Oakhurst Street.

¶4.    When they arrived at Allen's home, Allen forced Dear out of the car and onto the front porch. According to Dear, Allen began to rummage through Dear's pockets and took his wallet and all its contents. Dear testified that while Allen was sorting through the wallet, the other two men were still brandishing their weapons. Dear was then taken inside the house and placed on the living room floor. According to Dear, Allen became agitated and began kicking and beating him in the stomach and head because Dear had only $80 in his wallet. Dear stated that he repeatedly pleaded for help and asked Allen to take him to the hospital. According to Dear, Allen told him that he could not take him to get help because Dear might "snitch" on him and the other men. Dear told Allen that if they would just take him to the hospital, he would say that Allen had found him on the side of the road in his current condition and would not implicate them in the assault. Dear testified that before Allen took him to the hospital, he made him go outside and then pushed him off the front steps. As a result, Dear fell and hit his head. According to Dear, Allen then grabbed him and made him get into the back seat of Allen's car. Dear testified that Allen put a gun to his head for a second time and told him that if he told anyone about what happened, he would kill Dear's

3

family. Ultimately, Allen drove Dear to the hospital. When they arrived, Allen and Tyrekius carried Dear into the hospital and told a nurse that Dear had been shot and that they found him in the road. Allen left the hospital immediately after dropping Dear off. Dear was interviewed at both the hospital in Clarksdale and the hospital in Memphis. Out of fear for his safety and the safety of his family, Dear did not tell investigators about Allen's participation in his assault, robbery, or kidnapping until he was transported to Memphis for treatment.

¶5. Dear's father, Willie Wolfe, testified that on the evening of May 13, 2020, or early morning of May 14, 2020, he was in bed asleep when Allen rang his doorbell. Allen told Wolfe that Dear had been shot and that he had been taken to the hospital. However, Allen denied any involvement in Dear's assault. Wolfe immediately drove to the Clarksdale hospital to be with his son but soon learned that Dear would be transferred to MED in Memphis. Before Wolfe could go home and pack up his things to meet Dear at MED, he received a call that Dear's car had been found. While Wolfe was at the site where the car was found to identify the vehicle, Allen also arrived at the site. Wolfe testified that Allen was constantly asking questions like, "Did your son say who had done this? Do you know who done it?"

¶6. Allen chose to testify in his defense at trial. According to Allen, he was taking his cousin to visit his girlfriend on the night in question when he saw Dear walking in the road. Allen stated that he stopped his car to help because he did not want Dear to get hit in the road. Once Allen stopped, he noticed that Dear had been shot multiple times in his legs.

4

Allen testified that he helped Dear get into his car and took him to his house on Oakhurst Street to get help. From there, Allen asserts that he and Tyrekius drove Dear to the hospital. Allen testified that after he left the hospital, he drove to Dear's father's house to let him know that Dear had been shot and was at the hospital. Allen claims that once he gave the news to Dear's dad, he went home and started cleaning out his car. Allen admitted, though, that he went back to the location where he had allegedly picked up Dear earlier and spoke to Dear's family and investigators.

¶7. A search warrant was obtained for Allen's Oakhurst residence. Officers observed blood on the front porch of Allen's home that had recently been painted over. Spray paint cans were also found near the front door of the home. It was later determined that the blood samples from Allen's front porch belonged to Dear.

¶8. After the trial commenced and deliberations concluded, the jury returned a verdict of guilty on all three counts. Allen was sentenced to serve a total of twenty years in the custody of MDOC. Allen moved for a new trial or judgment notwithstanding the verdict, which the trial court denied. Allen appealed.

## ANALYSIS

¶9. Allen's counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005),[1] representing to this Court that "counsel diligently searched the procedural and

---

[1] In *Powe v. State*, 366 So. 3d 944, 945 (¶8) (Miss. Ct. App. 2023), we explained:

*Lindsey* establishes the "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18).

factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Jason Allen's behalf in good faith for appellate review, and upon conclusion, have found none." Counsel requested Allen be granted an additional forty days within which to file a pro se supplemental brief. By our order dated January 24, 2024, this Court granted Allen an additional forty days to file a supplemental brief; however, no brief was filed.

¶10. We have conducted an independent and thorough review of the record in this case. There is legally sufficient evidence to support Allen's conviction, and we find no issues that warrant reversal of Allen's convictions or sentences. *See Jackson v. State*, 335 So. 3d 620, 623 (¶11) (Miss. Ct. App. 2022).

¶11. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**