# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00906-COA

**NOAH BOOTH A/K/A NOAH D. BOOTH A/K/A NOAH DEANTHONY BOOTH**           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2023 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/03/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial, Noah Booth was convicted of second-degree murder and sentenced to serve forty years in the custody of the Department of Corrections. Booth appealed. Booth's appointed appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Counsel represents that he has diligently reviewed the record but has been unable to find any arguable issue for appellate review. This Court notified Booth of the *Lindsey* brief's filing and gave him time to file a pro se supplemental brief, but Booth did not do so. We have now conducted our own review of the record and find no arguable issues on appeal. Accordingly, we affirm Booth's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On February 6, 2019, William Myers was shot while at a small outdoor gathering at a residence in Hattiesburg.  Witnesses told police that the shots came from a wooded area next to the property, but no one saw the shooter.  Myers died from a single gunshot wound to the back.  Myers's autopsy revealed the bullet was a .38-caliber projectile.

¶3.     The lead detective on the case, Jeremy Dunaway, learned that Myers was a gang member and drug dealer.  Myers allegedly had several enemies, and Dunaway learned that the shooting was likely gang-related.  Dunaway identified several potential suspects.  He ruled out some suspects whose alibis he could confirm.

¶4.     About three weeks after the shooting, Hattiesburg police initiated a routine traffic stop.  During the stop, the officers asked the vehicle's two occupants to exit the vehicle and conducted a pat-down search of both individuals.  The passenger in the vehicle, Alfred McCaskill, had a handgun near his ankle.  McCaskill fled on foot, but the gun fell to the ground.  Officers recovered the gun, a silver .357 revolver.

¶5.     Dunaway believed that the gun was connected to Myers's murder, so he sent it to the Mississippi Forensics Laboratory for analysis.  Testing showed that the projectile recovered during Myers's autopsy was fired from the revolver recovered during the traffic stop.

¶6.     A few days later, McCaskill was arrested, and Dunaway interrogated him.  McCaskill stated that he had purchased the gun from Booth a few days before the traffic stop, but he did not know it had been used in Myers's murder.  McCaskill told Dunaway that days before Myers's murder, Booth posted on Facebook that he "was going to retaliate" against a rival

gang for a previous shooting.

¶7.     Dunaway located Booth and brought him in for questioning.  Booth claimed he had been in Brookhaven on February 6 with his girlfriend, Monicia White.  Booth said he read about Myers's murder on social media but that if Dunaway "needed to know more" about the murder, he "would need to ask the guys under the trees."  Dunaway testified that Booth was "all over the place" during the interview, which "spiked his interest" in Booth as a suspect.

¶8.     Dunaway then interviewed White.  White testified at trial that when she saw Booth on February 3, three days before Myers's murder, Booth showed her a silver revolver and a second gun.  White did not talk to Booth again for three days.  On February 6, White called Booth on the phone, and Booth answered and said, "[B]abe, I'm gonna call you back.  I'm hiding in the bushes."

¶9.     A few days later, Booth told White that he had killed someone.  White testified that she did not believe Booth at first.  A few weeks later, Booth said again that he had killed someone, but White still doubted him.  A few days later, Booth told White a third time that he had killed someone.  When White asked whom he had killed, Booth said he had killed "Biscuit" for "retaliation."  "Biscuit" is Myers's nickname.  At trial, White testified that the silver revolver Booth showed her on February 3 was the same gun that officers later recovered from McCaskill.

¶10.    Dunaway learned that Booth was being held in the Stone County jail on an unrelated charge. Dunaway approached one of Booth's cellmates, James Windham, to gather information on Booth.  Windham testified that "multiple times a day," Booth told other

3

inmates that "he really had a body," meaning he had killed someone. Windham stated that Booth spoke openly to him about Myers's murder. Booth told Windham that he and another man "laid in the bushes" and "shot into the house." Windham testified that Booth frequently rapped about Myers's murder and said that he shot Myers with a silver .357 revolver.

¶11. Booth was indicted for first-degree murder, and his case proceeded to trial. At the conclusion of the State's case-in-chief, the court denied Booth's motion for a directed verdict. Booth chose not to testify and rested his case without presenting any evidence. The jury found Booth guilty of second-degree murder, and the court sentenced him to serve forty years in the custody of the Department of Corrections. Booth filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## DISCUSSION

¶12. *Lindsey* establishes the procedure to follow when appellate counsel representing an indigent criminal defendant identifies no arguable issues on appeal. *Lindsey*, 939 So. 2d at 748 (¶18). Booth's appellate attorney complied with *Lindsey*'s requirements and certifies that he "has diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Mr. Booth's behalf in good faith for appellate review, and upon conclusion, found no errors which were ultimately prejudicial to Mr. Booth." After counsel filed his brief, we granted Booth forty days to file a pro se supplemental brief, but Booth has not done so.

¶13. We have independently reviewed the record and conclude that there are no arguable issues for appellate review. Therefore, Booth's conviction and sentence are **AFFIRMED**.

4

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR.**