# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01102-COA

JAMES EARL DORTCH, JR. A/K/A JAMES       APPELLANT
EARL DORTCH A/K/A JAMES DORTCH, JR.
A/K/A JAMES DORTCH

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2024 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON III |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND LASSITTER ST. PÉ, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A man was convicted of capital murder while engaged in the commission of a robbery and was sentenced to life imprisonment as a habitual offender. On appeal, his appointed counsel certifies there are no arguable issues warranting appellate review. After an independent and thorough review of the record, we affirm.

## BACKGROUND

¶2. On October 31, 2021, Avis Terrell Jones went to the Dollar General in Mt. Pleasant to buy some laundry detergent. When he arrived, he was confronted by James Earl Dortch

Jr., a man Jones had never met. Witnesses noticed the two men having what "seemed to be a normal conversation." After some time, Dortch and Jones "began parting ways." But then, Dortch "turned back around . . . took a couple of steps" toward Jones, "pulled [out] a gun," and shot Jones.

¶3. Dortch fired two shots: the first was "shot straight into the ground at the victim's feet," and the second "shot [Jones] right in the chest, abdomen area." While Jones lay in the Dollar General parking lot catastrophically injured, Dortch "got into [Jones's] car" and "took off." Jones passed away as a result of the gunshot wounds.

¶4. Dortch was subsequently indicted in Marshall County as a habitual offender for capital murder while he was engaged in the commission of a robbery.

¶5. At trial, multiple witnesses were called to testify on behalf of the State. Deputy Kelvin Reynolds of the Marshall County Sheriff's Department testified that he responded to a call regarding a shooting at the Dollar General. When he arrived on the scene, the deputy disclosed that "[t]he victim was laying in front of the store" while first responders were attempting to provide him aid. He "talked to one of the first responders" who "advised [him]" that the shooter "was a black male walking down Mt. Pleasant Road[.]" As a result, Marshall County dispatch issued a BOLO for "a black male wearing black clothing."

¶6. Afterward, the deputy disclosed that he "immediately left" the scene and drove "down Mt. Pleasant Road" where he "made contact" with Dortch. Finding that he "fit the BOLO," the deputy arrested Dortch and took him into custody. Deputy Reynolds further testified that only after he took Dortch to the sheriff's department did he discover that Dortch wrecked the

2

victim's car about a mile from the Dollar General.

¶7.     Investigator Ladaryl Odum of the Marshall County Sheriff's Department testified that he and a fellow investigator collected evidence at the crime scene. The investigator disclosed that "two shell casings" from a 9mm Ruger handgun were found in the parking lot of Dollar General. Additionally, Investigator Odum confirmed that he was aware the shooting was caught on the store's video surveillance footage and that he had seen the video. When asked whether he was able to identify the shooter in the video, the investigator responded that he identified the shooter as "James Dortch."

¶8.     Investigator Kelly McMillen of the Marshall County Sheriff's Department testified he performed a gunshot residue test on Dortch at the sheriff's department. He explained to the jury the process of collecting samples from Dortch's hands using a gunshot residue kit. Investigator McMillen noted that he then sent the samples to the Mississippi Forensics Laboratory for testing.

¶9.     Lauren Harvey, who worked in the trace evidence section of the Mississippi Forensics Laboratory, also testified. She explained that her work in the trace evidence section "looks at small evidence," including "gunshot residue, fire debris, paint, glass, hairs, fibers, and fracture match." She was admitted as an expert in the field of gunshot residue examinations by the trial court. Harvey recounted to the jury that she received a request from Marshall County investigators in October 2022 asking her to perform a gunshot residue examination based on the samples submitted in this case. She performed the examination, and the results revealed that "there were particles indicative of gunshot residue observed to be present" on

Dortch's hands.

¶10.    The State also provided eyewitness testimony from four individuals: Shania Crawford, Allen Stacks, Everett West, and Justin Allen Gray.  Crawford testified that she was the manager on duty at the Dollar General on the day of the shooting.  She disclosed that while she "was stocking in the back," her co-worker told her a "man was outside arguing with customers."  After Crawford went outside to see what was happening, she explained that she saw a man whose name she could not remember but whom she recognized as a "regular customer" arguing with Jones.  Crawford testified that she ran back into the store once she saw the man she recognized "pull[] a gun."

¶11.    Stacks testified that he lived about twenty-five to thirty yards from the Dollar General.  He recounted to the jury that on the day of the shooting, he  was "outside in [his] driveway . . . talking to his daughter" on the phone when he "heard a gunshot."  After hearing the gunshot, Stacks explained that he "ducked behind [his] car" and then "saw a man walking up and he bent over and shot somebody laying on the ground."  He disclosed that the shooter "got into a car" afterward and "took off."  Stacks testified that he hung up with his daughter and called 911.  The 911 call was then admitted into evidence and played for the jury.  When asked whether he could identify the shooter in the courtroom, Stacks identified Dortch.

¶12.    West also lived near the Dollar General, though he lived about "half a mile" away.  He testified that on the day of the shooting, he "went to get a little Halloween candy" and "noticed [Dortch] there."  West explained that he knew of Dortch because he "had been seen walking the roads . . . in the community and kind of causing a stir . . . for a couple months

4

prior to that." West further explained that Dortch "had gotten a checkbook and my father-in-law's cell phone out of his truck" a couple weeks earlier so he "recognized him from that" as well.

¶13.  West disclosed that he never saw Dortch go into the store, but that when he came out from the store Dortch was "drawing a little attention to himself." He recounted that Dortch "had some music playing on his cell phone" while he was "singing or dancing and pacing back and forth in front of the store." West acknowledged witnessing Dortch "and [Jones] talking to one another" but recalled it "seemed to be a normal conversation" not "a heated argument or anything." West further testified that although he did not know Dortch was armed, he "saw [Dortch] pull out gun and shoot [Jones]."

¶14.  Gray also testified to being at the Dollar General on the day of the shooting. He testified that he specifically chose to back into a parking spot because, while pulling in, he "noticed a gentleman pacing back and forth, looking agitated." Gray also noticed that Jones was "staring at the gentleman pacing back and forth." "Those little things," Gray explained, "just kind of set off an alarm in my head to back [the car] in." Gray disclosed that he next observed the agitated man approach Jones but that Gray never saw Jones act aggressively toward the man. Soon after, the two "began parting ways," but then the man "turned back around," pulled out a gun, and "he fire[d]" it at Jones. Gray testified that he heard two shots fired and then witnessed the man get into a vehicle and drive off.

¶15.  The jury also heard from the forensic pathologist who performed Jones's autopsy. Dr. David Arboe testified that at the time of the shooting, he was employed by the Office of the

5

State Medical Examiner in Mississippi.[1] The trial court admitted Dr. Arboe as an expert in the field of forensic pathology. Dr. Arboe testified that he performed the victim's autopsy approximately nine days after the shooting, explaining the "main injury [Jones] sustained was what I call a perforating gunshot wound of the abdomen." He further explained that this meant there was both an entrance and exit wound, and that Jones sustained two wounds total. Dr. Arboe concluded that Jones's "manner of death [was] homicide" and his "cause of death [was] a gunshot wound of the abdomen."

¶16. Ultimately, the jury found Dortch guilty of capital murder while engaged in the commission of a robbery. He was sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83, and ordered to serve a life sentence without eligibility for parole in the custody of the Mississippi Department of Corrections.

¶17. Dortch appealed, and his appointed counsel filed a brief certifying that no arguable issues existed to present on appeal.

## DISCUSSION

¶18. "Our Supreme Court has established a 'procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal.'" *Dyer v. State*, 338 So. 3d 129, 131 (¶12) (Miss. Ct. App. 2022) (quoting *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005)). In addition to filing a brief in compliance with Mississippi Rule of Appellate Procedure 28(a), counsel must also

---

[1] At trial, Dr. Arboe testified via Zoom because he moved to Mesquite, Texas, and was no longer working in Mississippi.

certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Lindsey*, 939 So. 2d at 748 (¶18) (Miss. 2005). Then, "[t]he attorney must send a copy of this brief to the defendant, inform the defendant that no appealable issues have been identified, and notify the defendant of the right to file a pro se brief." *McClain v. State*, 393 So. 3d 1007, 1009 (¶10) (Miss. 2024) (quoting *Thomas v. State*, 247 So. 3d 1252, 1256 (¶9) (Miss. 2018)). "After receiving a *Lindsey* brief, this Court will review the record and any pro se brief filed by the defendant to determine whether any arguable issue exists." *Id.* (citing *Lindsey*, 939 So. 2d at 748 (¶18)).

¶19.    Upon review, we find that Dortch's appointed counsel complied with the procedures established in *Lindsey*. In his brief, counsel certified that he "scoured the record" but was unable to find "any arguable issues which could be presented [to this Court] on Dortch's behalf in good faith[.]" He further certified that he mailed Dortch a copy of his brief informing him "that counsel finds no arguable issues in the record" and that he "has a right to file a pro se brief." This Court entered an order allowing Dortch "forty days to file a pro se brief raising any issues he desires to be considered on appeal." *See* Order, *Dortch v. State*, No. 2024-KA-01102-COA (Miss. Ct. App. March 25, 2025). Dortch did not file a pro se supplemental brief.

**CONCLUSION**

7

¶20. After independently reviewing the record, this Court finds no arguable issues that would require supplemental briefing. As such, Dortch's conviction and sentence are affirmed.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**